**BEKINS et al. v. LINDSAY–STRATH-MORE IRR. DIST. et al.**

**No. 9206.**

Circuit Court of Appeals, Ninth Circuit.

Sept. 5, 1940.

Rehearing Denied Oct. 15, 1940.

W. Coburn Cook, of Turlock, Cal., for appellants.

Guy Knupp and Mitchell, Silberberg, Roth, & Knupp, all of Los Angeles, Cal., and James R. McBride, of Lindsay, Cal., for appellee Lindsay-Strathmore Irr. Dist.

Harry W. Horton, of El Centro, Cal., A. L. Cowell, of Stockton, Cal., Hankins & Hankins, of San Francisco, Cal., Thos. C. Boone, of Modesto, Cal., C. F. Metteer, of Sacramento, Cal., and Arvin B. Shaw, Jr., of Los Angeles, Cal., for amicus curiae, Irrigation Dists. Ass'n. of California.

George Herrington, of San Francisco, Cal. (Orrick, Dahlquist, Neff & Herrington, of San Francisco, Cal., of counsel), for amici curiae Imperial Irr. Dist. Bondholders Committee.

Call, Murphey & Davis and Robert B. Murphey, all of Los Angeles, Cal., for amicus curiae Lynn Atkinson, a creditor.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal from the interlocutory decree of the United States District Court confirming a proposed plan of composition of debts, Chapter IX of the Bankruptcy Act of 1898 as amended, 11 U.S.C.A. §§ 401–404.

The Lindsay-Strathmore Irrigation District [hereinafter for convenience referred to as the District] is an irrigation district organized under the provisions of the California Irrigation District Act, Cal.Stats. 1897, p. 254, as amended; Deering's General Laws, Act 3854. Two series of 6% coupon bonds were issued, originally aggregating $1,650,000 in principal, and maturing over twenty years. Matured bonds and coupons were paid as they fell due until July 1, 1933, when the District first defaulted, and no bonds or coupons have been since paid.

At the time of the District's default, the tax delinquency had reached 47%, and the District had bought in, for tax delinquency, one third of the land within the District. In October of that year the District made

application to the Reconstruction Finance Corporation [herein referred to as R. F. C.] for funds to assist the District in its financial difficulties. The R. F. C. on May 16, 1934, by resolution authorized a loan of not exceeding $859,000 to the District. The loan was calculated to pay to the bondholders 59.97 cents on each dollar of principal amount of their bonds. The resolution of the R. F. C. provided that nothing therein contained should be deemed to limit the right of R. F. C. "to enforce full payment of principal or interest on Deposited Securities it may hold, at any time when it may deem it advisable to do so in order to protect its rights as holder of the Deposited Securities against any rights claimed by the holders of Old Securities that have not been deposited". The plan contemplated the issuance to R. F. C. of new 4% bonds for the amount expended by them in the purchase of old securities of the District, and the cancellation of the old securities. The new 4% bonds have not been issued, nor have the old securities been cancelled.

As soon as the loan from R. F. C. was authorized, arrangements were made to carry out the plan, and by July 23, 1935, 85% of the outstanding bonds had been deposited by the bondholders. On the last named date the District filed proceedings under the Municipal Bankruptcy Act as it was then in effect, 48 Stat. 798, 11 U.S.C.A. §§ 301-303. We shall refer to these proceedings as the first bankruptcy case and to the Act under which they were brought as the old Act. The District Court confirmed the plan, and appeal was taken to this Court from the decree. In the meantime the United States Supreme Court had declared the old Act unconstitutional in the case of Ashton v. Cameron County Water Improvement District, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309. In view of this situation we reversed the decree of confirmation in the first bankruptcy case and remanded the cause with instructions to enter a decree of dismissal [9 Cir., 88 F.2d 1004]. The decree of dismissal entered in accordance with our mandate is now final.

After the passage of the amended Municipal Bankruptcy Act [which we shall refer to herein as the new Act; 11 U.S.C.A. §§ 401-404] the District instituted the present proceedings. On October 2, 1937, the appellants, except appellant Curtis, filed a motion to dismiss the petition. The District Court granted the motion to dismiss,

on the ground that the new Act was unconstitutional. An appeal was taken to the United States Supreme Court, resulting in the decision of that Court in the case of United States v. Bekins, 304 U.S. 27, 58 S. Ct. 811, 82 L.Ed. 1137, upholding the constitutionality of the new Act, and remanding the cause to the District Court for further proceedings. It is from these further proceedings that the present appeal is taken.

The following points are made by appellants:

"1. By the terms of the statute the Court was without jurisdiction.

"2. The State of California has provided by legislation and Court procedure for the control of the governmental affairs of the District.

"3. The cause is res judicata.

"4. Neither the Reconstruction Finance Corporation nor William J. Burns, trustee, are creditors affected by the plan.

"5. The plan is one fully executed out of Court, and not pursuant to the statute.

"6. The claims are not all of the same class.

"7. The plan of composition is not fair, equitable, or for the best interests of creditors, and it is discriminatory.

"8. The plan of composition is not presented in good faith.

"9. The decree unlawfully takes trust funds and vested rights belonging to respondents.

"10. The Court erred in incorporating additional findings in the decree, and in entering the decree.

"11. The State has not given its consent.

"12. The act is unconstitutional in that it violates the Federal Constitution."

We shall dispose of all jurisdictional objections first, and then proceed to a discussion of the merits of the controversy.

Appellants' First, Second, Third, Eleventh and Twelfth points are substantially the same as points raised by the appellants in the case of West Coast Life Insurance Company v. Merced Irrigation District, 9 Cir., 114 F.2d 654, decided by us this day. In the cited case we held against appellants on all of these jurisdictional objections, and we likewise hold that the District Court had jurisdiction of the present proceedings.

■ As to the arguments made by appellants to the effect that neither the R. F. C. nor Burns, who was appointed trustee in effecting consummation of the plan, are creditors affected by the plan, they are the same as those advanced in the Merced case, supra. The situation is substantially the same, although the mechanics for carrying out the plan were different in some respects. Here the transaction was consummated through the appointment of a trustee for R. F. C. on one hand and an agent of the District on the other. But, as well stated by the District Court [25 F.Supp. 988, 991]: "We believe that the designation of a trustee for R. F. C. on one hand and an agent of the District on the other in no manner affected the intent of the parties to the agreement or the status and obligations of the principals, or the right to have the bonds delivered by the agent, Hostetter, to the trustee, Burns, considered at full face value in ascertaining and determining the percentage of consenting creditors to the debt composition herein * * ".

In the Merced case we held that the transaction there involved was as follows: "R. F. C. agreed to furnish money to the District to refinance its entire bonded debt * * *. The arrangement was subject to the condition that all old securities should be purchased and held by R. F. C. until R. F. C. was satisfied that refinancing was complete. During this time, the old securities were to be kept alive and outstanding. When the refinancing was complete, then and then only was R. F. C. under the duty of buying and accepting refunding bonds, and surrendering the old securities for cancellation". In that case, as in the present case, the R. F. C. had paid consenting bondholders the price for their bonds contemplated by the plan.

■ We quote with approval the language of the trial judge as to the nature of the transaction between the District and R. F. C. in the present case:

"The mere use of terms in the writings by which the acquisition and control of bonds was effected, such as 'loan,' 'pledge,' and 'collateral security,' does not ex proprio vigore determine the contractual relationship of the parties in interest regarding the bonds affected by the plan under consideration or the present status of the bonds of the District. The intent of the parties to a contract is not to be determined by the 'label' of the agreement, but rather it is to be gathered by considering all of the acts, statements and writings which go to make up the contract [citing cases] and if such rule is applied to the entire record before us, we think it clear that the R. F. C. loaned its money for the benefit of the District and that the District accepted the financial help from R. F. C. with the joint central purpose and mutual intent that all outstanding bonds be kept alive until such time as R. F. C. determined that the project of bond debt reduction agreed to had been attained, and in the interim, so as to more completely safeguard the R. F. C. loan and also to prevent frustration of the debt reduction scheme, the parity of rights of consenting and nonconsenting bondholders be maintained. * * *

"It is thus made clear to us from the entire record that it is only upon the accomplishment of the plan that the bonds surrendered to the trustee of R. F. C. are to be cancelled and exchanged for new 4 per cent. refunding bonds or are to become functus officio."

■ With the nature of the transactions between R. F. C. and the respective Districts the same, it follows that our ruling in the Merced case and the authorities which were there cited, are equally applicable here. We hold that the consents filed by R. F. C. and Burns, Trustee, are valid and shall be considered in determining the percentage of consenting creditors to the debt composition.

■ We also answer appellants' Fifth and Sixth and Ninth points as in the Merced case, and hold that the decree of the District Court should be confirmed in these respects.

This leaves only points Seventh, Eighth and Tenth for our consideration.

### Good Faith of the District

■ Appellants in their Eighth point contend that the District is precluded from bringing these proceedings by reason of bad faith. The District Court found that: "The petition herein was properly filed in good faith, pursuant to and in compliance with the provisions of the above mentioned Act of Congress * * *".

There is no merit in appellants' contentions that the record does not sustain this finding.

### Fairness of the Plan

■ Appellants' Seventh point relates to the fairness of the plan. At the outset it should be noted that appellants do not

dispute the finding that the District was insolvent and unable to meet its debts as they mature, their entire complaint being that the plan of composition is "unfair, inequitable, and injust and is not for the best interests of the creditors and it discriminates unfairly in favor of the Reconstruction Finance Corporation".

In order to fully understand our answer to appellants' position, however, we review briefly the financial condition of the District.

We have above called attention to the fact that at the time of the District's default in July, 1933, the tax delinquency had reached 47%, and that the District had bought in, for tax delinquency, one third of the land within the District. By progressive steps the District's default accumulated until at the time of the hearing of these proceedings in the trial court, it amounted to the sum of $967,920.57. This sum was made up of $412,000 matured principal of bonds, $409,125.00 in face amount of matured coupons, and $145,795.57 interest on the matured obligations at 7% as provided by Section 52 of the California Irrigation District Act.

The record contains tabulations of tax performance, which clearly indicate the soundness of the trial court's finding that the proposed plan is "in every respect fair, equitable and for the best interest of all creditors". It seems clear to us that the 59.978 cents on the dollar of principal amount of their bonds is all that the bondholders can reasonably expect in the circumstances.

### Findings of the Court

■ Appellants' entire argument on their Tenth point is set forth in their brief as follows:

"The findings were signed by the Court February 27, 1939.

"Thereafter on March 11, 1939, the Court signed the interlocutory decree. The decree erroneously contained additional findings not brought up on motion pursuant to Rule 52(b) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c."

No reference is made as to what findings are complained of, nor as to whether or not they were necessary to support the decision. In this situation we do not consider this portion of appellants' Tenth point.

■ Argument is also contained to the effect that it was error for the decree to order the District to deposit funds for the consummation of the plan. The contention is that this is "distinctly contrary to the terms of Section 83 prohibiting interference with fiscal affairs. The decree to be good at all should have been permissive only". We hold that this is not a matter of which the bondholders can complain. The District has not objected to the terms of the decree, and we will not interfere with the confirmation of the plan upon an alleged infringement of rights of the District of which it does not complain.

The decree of the District Court is affirmed.