### MOODY et al. v. JAMES IRR. DIST.

No. 9353.

Circuit Court of Appeals, Ninth Circuit.

Sept. 5, 1940.

Rehearing Denied Oct. 15, 1940.

W. Coburn Cook, of Turlock, Cal., for Moody and Jordan, appellants.

Ralph Alfred Wood, Jr., of San Francisco, Cal., for Selby, appellant.

A. L. Cowell, of Stockton, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from an interlocutory decree confirming a plan of the James Irrigation District [hereinafter referred to as the District] for a composition of its indebtedness under Chapter IX of the Bankruptcy Act of 1898 as amended, 11 U.S.C.A. §§ 401–404.

The District consists of a gross area of about 24,390 acres in Fresno County, California, and was organized as of February 6, 1920 pursuant to the California Irrigation District Act, Cal.Stats.1897, p. 254 as amended, Deering's Gen.Laws, Act 3854.

On May 16, 1920, the District issued its 6% bonds aggregating in principal amount $1,000,000. The bonds are each in the principal amount of $1,000, and mature in amounts of $50,000 yearly from 1928 to 1947. The obligation of the District for the payment of interest, payable semi-annually, is evidenced by negotiable coupons detachable from the bonds.

There is what is known as Reclamation District No. 1606 organized under the provisions of the Political Code of California relating to Reclamation Districts, with a bonded indebtedness of $447,000, which very largely overlaps the area of the District.

The petitioner District levied yearly assessments and bought in the delinquencies and by appropriate quiet title actions eventually acquired title to the real estate of the whole District, except about 120 acres thereof. The District was admittedly hopelessly insolvent and was unable to meet its obligations as they fell due, when it entered into an agreement of composition with the Reconstruction Finance Corporation [herein referred to as R.F.C.] whereby each holder of a bond of the District should receive 24.976 cents on the dollar of the principal amount, provided [quoting from the plan]: " * * * that each holder of bonds of warrants surrendered in accordance with this plan shall deliver to James Irrigation District bonds of Reclamation District No. 1606 in principal amount not less than such a proportion of $445,000 as the total principal amount of such securities surrendered by such creditor bears to $1,016,954.75, and shall deliver therewith all unpaid coupons appurtenant to the reclamation district bonds so delivered, or shall pay to said district, out of the money received by such creditor for such securities of James Irrigation District, an amount equal to 17.374 cents for each dollar of the

sum by which the principal amount of reclamation district bonds so delivered is less than said proportionate amount * * * ".

The appellant owners of bonds of the District refused to accept the plan, resisted its confirmation in the District Court, and appeal to this court from the interlocutory decree awarded by the District Court.

The case of West Coast Life Insurance Company v. Merced Irrigation District, 9 Cir., 114 F.2d 654, decided this day by this court was based upon the same statutes as the instant one, and some of the points made by appellants here are the same as made and ruled upon in the other case. We supported our decision by an opinion thoroughly discussing these points and analyzing such statutes, and we deem it proper to herein refer to such opinion without repeating our reasoning as to points common to both cases.

■ The first proposition presented by appellants is: "The trial court had no jurisdiction of the cause, nor of the parties."

We disposed of this question adversely to appellants' theories in the Merced case, but appellants argue that the instant cause is different in principle. We quote from their opening brief: "The James Irrigation District owns all the land within the district except about 120 acres. Under California law all the assets of such a district is property of the State of California. The state, therefore, is the taxpayer, or more properly expressed, stands in the former taxpayer's place. In a peculiar sense, therefore, the State owes the debt to the bondholders. How can it then be the petitioning bankrupt and seek to compose the debts between it and its creditors?"

We are unable to see any distinguishing features by reason of these facts. The difference is one of degree only as in the Merced case some of the land within the district upon which there were delinquency liens had been purchased and sold by the district, while most of the land in the petitioner District has been the subject of purchase by the District and sale to private purchasers. The taxing power of the petitioner District has practically become exhausted, leaving the bonded indebtedness outstanding, the clearest possible case of insolvency and inability to meet its debts as they become due. The other points and arguments under this "Proposition" are covered in the Merced case. We hold that the trial court had jurisdiction of the cause.

■ Appellants' "Second Proposition" is "The Plan of Composition has not been accepted by the required percent of creditors". As stated in appellants' brief: "This proposition is based upon the theory that the R.F.C. is not a creditor affected by the plan, and that when it acquired an interest in the bonds of the irrigation district it did not thereby become a creditor of the district of the same class as appellants." This point was thoroughly treated in the Merced opinion, and upon the reasoning therein we hold contra to appellants' contention.

■ Appellants' "Third Proposition" is "The Court erroneously classified the creditors."

This point was made in the Merced case and there decided contrary to the contenders' position. However, appellants present an argument based upon facts different from those obtaining in the Merced case. The point cannot be stated any better than to quote from appellants' opening brief, as follows:

"Counsel for the district stated that there was some correspondence and telephone conversation about the matter in which it was suggested that in view of the fact that there were outstanding $30,000.00 of irrigation district bonds and $30,000.00 of reclamation district bonds, there should be 'some guarantee that if the district had to meet these obligations there would be something on hand to meet them. The court and counsel for the district remarked that this was undoubtedly what the deposit was for'.

"It was contended by the appellants that this deposit in effect constituted a trust fund out of which the respondents were entitled to be paid their preferred claims." But we decided in the Merced case that due bond interest and principal does not become preferred claims when presented and registered as provided by § 52 of the California Irrigation District Act. Had the District proceeded in its course as a solvent entity the holders of overdue bonds and interest would have been paid in accordance with § 61a of the California Irrigation District Act. But it did not and could not have so proceeded, and it resorted to the Bankruptcy Law for relief.

■ The $30,000 was deposited with the bank upon the insistence of R.F.C. before it would release a large sum of money of the proposed loan for the purchase of bonds. The contract provided that R.F.C. need not proceed with the purchase unless all bonds were available for its purchase. This proved to be impossible, so R.F.C. in order to proceed offered to do so if funds were deposited for the purpose of assuming the purchase of the whole issue if and when the court should decide in favor of the resisting bondholders. This deposit was in no sense a trust fund for the benefit of the appellants. The depositing of this sum was an act necessary to the progress of the plan and subject to modification or cancellation by the District and R.F.C., and there is no question of preference in the transaction. It was a part of the financing of the proposed plan of composition. We decided in the Merced case that the District had the legal right to finance from its own assets the plan by which it was to be relieved of its distress.

■ Fourth Proposition: "The District is not authorized by law to carry out the plan". Upon the authority of the Merced case we hold contra to this contention.

■ Fifth Proposition: "The Plan is Unfair".

This point rests upon the contention that the bonds and warrants purchased by R.F.C. are cancelled in favor of the proposed new bonds when issued hence the indebtedness of the District has already been reduced in accordance with the composition plan except as it is affected by the outstanding bonds of appellants. The same contention was present in the Merced case, and we adhere to our opinion expressed therein by holding contra to such contention.

Appellants also argue that the plan is unfair "because it ignores the presentation of appellants' bonds and coupons under § 52 of the California Irrigation District Act. We disposed of this claim adversely under appellants' "Third Proposition".

■ It appears that there are (quoting from the agreed statement of evidence) "outstanding bonds of certain school districts which overlap a part of the area of the District and levies have been and are regularly made for the payment of principal of and interest on such bonds". Appellants cite this fact as an element of unfairness. We have no other facts connected with such school districts and such indebtedness and appellants present neither argument nor authority to support their position. We think it is without merit.

See also our opinion in the Merced case where a similar contention was made by appellants.

■ The District was in a hopeless condition. We quote from the findings of fact which are not questioned in these particulars:

"That Petitioner is insolvent and unable to meet its debts as they mature and it desires to effect a plan of composition of its outstanding indebtedness, which consists of bonds in the total principal amount of $995,000, and warrants in the total principal amount of $21,954.75; that said bonds bear interest at the rate of 6 per cent per annum, payable semi-annually, which said semi-annual interest to the dates of maturity of the respective bonds is evidenced by coupons;. that at the time of the trial of this cause certain of said bonds in the total principal amount of $545,000 had matured and become payable but had not been paid, and certain of said interest coupons in the total amount of $505,010 had matured and become payable but had not been paid".

"That said Reclamation District No. 1606 has outstanding bonds in the total principal amount of $445,000, all dated December 1, 1914, bearing interest at the rate of 6 percent per annum; that prior to November 28, 1938, certain of said bonds in the total principal amount of $358,000 had matured and had not been paid and interest coupons in the total amount of $160,910 had also matured and had not been paid, and that certain other of said bonds in the total amount of $87,000 have not matured but are to mature in various amounts on July 1st of each year to and including 1941; that said bonds were secured by an assessment levied upon the lands within said reclamation district prior to the issuance of said bonds, and that more than one year prior to November 28, 1938, all of the lands within said reclamation district that are also within the boundaries of Petitioner, except about 222 acres thereof, had been sold to the County Treasurer of Fresno County for delinquent installments of the assessment by which said bonds are secured and had not been redeemed from such sales."

"That Petitioner has certain amounts in cash in its treasury apportioned to various funds as follows:

| | |
|---|---|
| Bond Fund | $ 2,757.30 |
| General Fund | 54,870.72 |
| Reserve Fund | 9,840.00 |
| Reclamation Bond Fund | 1,418.54 |

Suspended Credits deposited in the Federal Reserve Bank in San Francisco as additional security for the loan from the Reconstruction Finance Corporation 30,000.00

"That said funds were derived in part from assessments on lands in the District and in part from the sale or rental of lands acquired by the Petitioner pursuant to the sale of such lands by the Collector of Petitioner for delinquent assessments, and from other sources."

It is argued by appellants that the plan is unfair for the reason that the funds on hand show that the amount to be paid upon each item of indebtedness could well be greater than that provided by the plan. The point seems not to have been presented in the trial court, which found that the plan "is fair, equitable and for the best interests of its creditors * * ".

The evidence shows that Mr. H. E. Vogel, long a resident of Fresno County, California, and a member of the California Districts Securities Commission testified [we quote from the agreed statement]: "That, judging from past history, he thought that the indebtedness of $256,500 provided for in the plan of composition was well up to the limit of the ability of the lands in the District to meet".

It must be remembered that this is not a proceeding in liquidation and the principles to be applied must differ somewhat from such a proceeding. In liquidation it is perfectly evident that the creditors would get almost nothing. To afford the plan of payment proposed the District must be in a position to proceed as a going District and for this reason its cash in hand cannot be too greatly depleted.

It is in the testimony that: "The irrigation system had been kept in condition so that it could be operated, but the pumping plants are about 24 years old, and a great deal of expense will be required to put them in good condition". And that: "The financial statements of the District showed that a maximum of $43,872.85 in 1930 and a minimum of $20,655.95 in 1935 had been paid for electrical power for the operation of the pumps and the pumps required for lifting water from the San Joaquin River".

We do not see our way clear to declare that more could have been paid the creditors or that the plan could have been executed under a greater payment to the creditors.

Affirmed.