**JORDAN et al. v. PALO VERDE IRR. DIST.**

**No. 9133.**

Circuit Court of Appeals, Ninth Circuit.

Sept. 20, 1940.

Rehearing Denied Oct. 15, 1940.

W. Coburn Cook, of Turlock, Cal., and Chas. L. Childers, of El Centro, Cal., for appellants.

Stewart, Shaw & Murphey, Arvin B. Shaw, Jr., and Wm. L. Murphey, all of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Palo Verde Irrigation District [hereinafter for convenience referred to as the District] is an irrigation district organized under the provisions of a special act of the California Legislature known as the "Palo Verde Irrigation District Act" [Cal.Stats.1923, p. 1067]. It was organized for the purpose of taking over the properties and in general the functions of the Palo Verde Drainage District and the Palo Verde Joint Levee District of Riverside and Imperial Counties, and acquiring the properties of the Palo Verde Mutual Water Company. By the terms of the Act under which the District was organized, it assumed the obligations of the bond issues of the corporations above mentioned.

There are $850,000 of 6% bonds of the Palo Verde Drainage; $170,000 of 6% bonds of the Mutual Water Company; $1,216,330.36 of 6½% bonds of the Palo Verde Joint Levee District of Riverside and Imperial Counties; and $1,938,000 of 6% bonds of the petitioner District involved in these proceedings.

The District, beginning May 1, 1930, defaulted in the payment of all bonds which it had issued and which it had assumed. In 1933 it applied to the Reconstruction Finance Corporation [herein referred to as R. F. C.] for fund with which to refinance. A plan was worked out whereby R. F. C. would advance sufficient funds to pay all bondholders 24.81 cents on the dollar of the principal amount of their bonds. Arrangements were made to carry out the plan, and the consenting bondholders (more than 92% of the entire) received the amount provided. On March 29, 1935, the District filed a petition for readjustment of its debts under the Municipal Bankruptcy Act as it was then in effect. 48 Stat. 498, 11 U.S.C.A. §§ 301–303. Before the decision in these proceedings had been rendered, the United States Supreme Court handed down its decision in the case of Ashton v. Cameron County Water Improvement District No. 1, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309, holding the Act under which the proceedings were brought to be unconstitutional. Thereupon the District Court dismissed the proceedings, and we dismissed

the District's appeal from the judgment of dismissal.

After the judgment. of dismissal in the District Court, the District filed proceedings under the California Irrigation District Refinancing Act, Cal.Stats.1937, Chap. 24, page 92. The State Court filed its opinion confirming the plan ·of readjustment, and directing findings to be prepared accordingly. Before findings were prepared the Supreme Court of the United States handed down its decision in United States v. Bekins, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137, holding the amended Municipal Bankruptcy Act [11 U.S.C.A. §§ 401–404] to be constitutional. The District filed a motion to dismiss the state proceedings, which motion was granted without prejudice. The question of· the dismissal of the state proceedings is now on appeal in the State Supreme Court.

The present proceedings were commenced in April 1937. When the cause came on for hearing before the District Judge, objections were made by the appellants to the introduction of any evidence on three grounds:(1) There was a proceeding pending in insolvency under the state law; (2) the cause was res judicata; and (3) the plan had been carried out, out of Court. The objections were overruled.

No arguments were made to the trial court on any points other than the three mentioned above.

On appeal to this Court the appellants urge fourteen grounds for reversal, designating each as a "proposition":

"1. The District Court was without jurisdiction to enter its decree touching the governmental and fiscal affairs of the Palo Verde Irrigation District, by the terms of Chapter IX;

"2. The pendency of the insolvency proceeding under Cal.Stats.1937, Chapter 24, was a bar to these proceedings;

"3. The cause is res judicata;

"4. The R.F.C. is not a creditor affected by the plan and cannot vote upon the proposition;

"5. The· plan had already been consummated long prior to the filing of the petition;

"6. The judge failed to classify the creditors properly;

"7. The plan is grossly unfair and inequitable;

"8. The plan is not proposed' in good faith;

"9. The State of California is the owner of the assets and may not repudiate its public debts, nor can the district, a public trustee, take bankruptcy;

"10. Trust funds and property are unlawfully taken by the proceeding;

"11. The liability of juristic persons not before the Court is unlawfully voided;

·"12. The District is not authorized by law to carry out the plan;

"13. The State of California cannot under its own Constitution consent or be a party to these proceedings;

"14. Chapter IX is unconstitutional as applied in these proceedings."

Propositions 4, 6, 7, 8, 9, 10, 11, 12 and 13 were not urged in the trial court.

 Propositions 1, 2, 3, 4, 5, 12, 13 and 14, in their essence, were made by the parties appellants in the case of West Coast Life Insurance Company v. Merced Irrigation District, 9 Cir., 114 F.2d 654, decided by us September 5, 1940. The support for such points was based upon practically the same arguments as made here. Upon the authorities therein cited and upon the reasoning used in that case we hold contra to appellants' contentions on. all of such propositions.

 Proposition 6. Appellants support this "proposition" upon five separate points: (1) R.F.C. is not the owner of bonds which are to be supplanted by a reissue of bonds hence has no beneficial interest in them which entitles it to join in the consent of creditors to the proposed. plan of composition. (4) Holders of matured bonds and coupons are in separate classes of creditors. These points were raised in the Merced case, supra, and there decided adverse to appellants' contentions. here. We adhere to our decision in the cited case.

(2) "The judgment holders are creditors because they hold judgments, and because these judgments are judgments. against other jurisdictional persons than, the bankrupt."

This point is presented upon the bare statement· as quoted without the support of· authority. It appears to us that the statute authorizing the proceeding covers this. point.

"That the holders of all claims, regardless of the manner in which they are evidenced, which are payable without preference out of funds derived from the same source or sources shall be of one class"·

Ch. IX, Bktcy.Act 1898 and Sec. 83(b). 11 U.S.C.A. §§ 401-404. See Vallette v. City of Vero Beach, 5 Cir., 104 F.2d 59, 124 A.L.R. 686.

(3) "The holders of the alternative writ of mandate are creditors of a separate class because they are creditors holding a pledge or security as specific property and revenue."

The "alternative writ of mandate" referred to is an order by a judge of the Superior Court of California in and for the County of Riverside, and is, in effect, an ex parte order to show cause why certain funds should not be used in a certain manner and commanding that they should be so used unless good cause should be shown at a fixed date why they have not been so used.

The case has gone no further than the filing of a demurrer to the first amended petition, as the court stayed proceedings on account of the pendency of the instant proceedings for the composition of the District's debts.

■ It is apparent that the issuance of the "alternative writ" referred to did not finally earmark, as a pledge or as a security, any money for any payment. We hold against the contention made. See our comment under Point (2), Sixth proposition. See, also, Vallette v. City of Vero Beach, supra, in which the court went much further than is necessary to support our holding, in that, in the cited case it was held that a final judgment would not act to change the class of the indebtedness.

(5) "The Drainage Act provides (Appendix p. 22) that the drainage bond issue is a prior lien (or claim) to any subsequent issue. In a technical sense, perhaps, the bond issue is in itself a lien, but the intent of the statute was to give this entire bond issue a priority to subsequent issues."

■ This point could not affect either of the appellants except James H. Jordan and the First National Bank of Tustin for they owned no Drainage District Bonds. In fact, the tendency of including such bonds in the one classification would be to better their positions. The point however is without merit for a careful reading of the applicable portion of the Drainage Act will demonstrate that the portion relied upon contemplates a subsequent issue of bonds under the Drainage Act.

"Sec. 30. Any bonds issued under the provisions of this act shall be a lien upon the property of the district and the lien for the bonds of any issue shall be a preferred lien to that for any subsequent issue. * * *" Drainage District Act (1903 Cal. Stats. p. 301, chapter 238)

No error was committed in classification of creditors.

■ Proposition 7. It is claimed that "The value of the land within the Palo Verde District warrants a vastly more generous payment to bondholders." This claim is based upon evidence of an appraisal of cleared and improved land within the District wherein the value was fixed at from $50 to $80 per acre. There is evidence to the effect that it has cost from $50 to $100 per acre to clear and level the land. The uncleared land is valueless desert. The indebtedness equals about $100 per acre of all cleared land. The trial court's conclusion as to the fairness of the plan was supported by two agricultural economists, one connected with the University of California and the other connected with R.F.C., and these economists took into consideration the probable ability of the land to pay for a period of thirty years projected into the future. We think the plan is fair and for the best interests of the creditors.

It appears that 99.66 percent of the land has been sold to the State because of delinquencies in the payment of District Assessments, and it is argued that the State is the owner and may not void the debt. Under this argument it would follow that the exercise of the right provided in the statute to the District to buy in land upon which there is a delinquent assessment would, when exercised, make the State directly responsible for a portion of any bonded indebtedness of the District.

■ We think the contention is untenable. The District continues an entity with the power (which it is actually using) to resell the land bought in to prospective users and therefore prospective assessment payers. The theory of the composition plan and of the law under which it is entertained is in accord with such procedure. The questions raised by appellants under this heading might be properly presented if the issues raised included the postulate that the District was to be disorganized and the property thereof taken directly by the State.

We think it unnecessary to discuss the other detailed points made under this "Proposition". We refer generally to the opinion in the Merced case, supra.

Proposition 8. We have reviewed the evidence as a whole and our conclusion is that the plan was proposed in good faith and was thoroughly considered by the trial court.

Proposition 9. This point is covered by our comment under "Proposition 7" and in the Merced case, supra. We hold against appellants' contention.

Proposition 10. In view of what we have already said herein, and what we have said in the Merced case, supra, we deem it unnecessary to comment upon this "proposition". We hold contra to its points.

Proposition 11. Under this heading appellants quote their assignment of error No. 27: "The court erred in not holding that some of the bonds and interest coupons held by appellants and some of the outstanding obligations of Palo Verde Irrigation District are obligations of the Palo Verde Drainage District and some are obligations of the County of Riverside, California, and some are obligations of the Palo Verde Joint Levee District of Riverside and Imperial Counties, and this court is without power or jurisdiction to consider or allow or approve any plan of composition or proceeding involving or affecting any of the said obligations of the Palo Verde Drainage District or of the County of Riverside, California, or of the Palo Verde Joint Levee District of Riverside and Imperial Counties."

It has been shown by the statement of facts that the Palo Verde Drainage District and the Palo Verde Joint Levee District were legally merged with the Palo Verde Irrigation District. The Palo Verde Irrigation District is hopelessly insolvent. It may be true that the merger made subsequent to the issue of bonds by the organization merged into the Irrigation District could not deprive the bondholders of the right to have assets of the merged districts applied to their indebtedness in a legal manner and to a legal extent. The point and the argument are academic only since the extreme distress of the whole situation makes its discussion wholly useless.

Affirmed.