## TAYLOR et al. v. PROVIDENT IRR. DIST.
### No. 9809.

Circuit Court of Appeals, Ninth Circuit.
Dec. 4, 1941.

W. Coburn Cook, of Turlock, Cal., for appellant.

George R. Freeman and Elmer Laine, both of Willows, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a proceeding under Chapter IX of the Bankruptcy Act providing for the composition of indebtedness of local taxing agencies, 11 U.S.C.A. §§ 401–404.

Appellee Provident Irrigation District was organized in 1918 under the provisions of the California Irrigation District Act. It comprised 22,805 acres of land and is overlapped by Reclamation District No. 2047. In 1918 it issued bonds in the principal amount of $1,000,000, maturing serially in each of the years 1932 to 1949. In 1921 there was a second issue in the amount of $190,000, maturing serially in the years 1922 to 1933. Bonds of both issues bore interest at the rate of 6% per annum payable semi-annually.

Financial difficulties early developed, and prior to the refinancing program the bonds were selling at prices ranging from 5 to 10 cents on the dollar. In 1933 Provident was in default in the payment of bond principal in the amount of $68,000 and in the payment of interest coupons in the amount of $169,433. At the time of filing the petition in this proceeding the total principal amount of bonds outstanding was $957,-000, of which $341,000 was matured. Unpaid and matured interest coupons totaled a sum in excess of $415,000. Between the years 1927 and 1938 the district had acquired title through delinquent assessments to all the lands within its boundaries except about 350 acres. Title to the same lands went also to the state and to Reclamation District No. 2047 as the result of delinquent taxes and assessments of those bodies. By 1936 the total public obligations against the lands, aside from the bonded

debt of the district, was in excess of $652,000.

In 1936 the district employed a fiscal agent in connection with a proposed refinancing program, and at that time it applied without success for a loan from the Reconstruction Finance Corporation. A study of the problems of the district followed, and after the conclusion of certain litigation between the district and some of its bondholders, the R. F. C. was asked to reconsider. In December, 1939 that institution granted a loan in the amount of $193,500 of which not to exceed $2,100 was to be used for expenses. The loan was made subject to the condition that the district exclude some 9,000 acres, settle and discharge all overlapping liens on the lands remaining in the district, and apply all surplus funds on hand at the date of disbursement and all subseqent net funds derived from the sale of district lands to the reduction of the indebtedness except as might be provided by the division chief of R.F.C.

The district accepted the loan and adopted a plan of composition providing for the payment of 20 cents for each dollar of principal amount of the bonds on condition that all unpaid interest coupons maturing on or after July 1, 1931 be delivered with the bonds. The resolution found that a portion of the outstanding coupons maturing on and prior to January 1, 1931 had been paid in full, and in order to equalize the interest payments it was provided that for each coupon maturing on or prior to that date the depositor should receive the full face value thereof. The payments on account of principal were to be made from the loan and the payment of interest coupons out of district funds.

It appears from the testimony developed at the hearing that the district had been launched during the rice boom days of the first world war, when the price of rice ranged from $4.50 to $8.50 per 100 pounds. After the war the price declined to a low of 65 cents, and as a result a large part of the lands went out of production entirely. During the past 10 years rice prices have fluctuated between the low of 65 cents and a high of $1.65. The soil of the area is heavy clay with some adobe and is subject to overflow in winter. Approximately 9,900 acres, now excluded from the district under the condition imposed by the R.F.C., are fit for nothing other than pasture and the remaining lands are adaptable principally to growing rice, which can be profit-ably raised only every second year on the better lands and only every third year on the poorer lands. At the time of the filing of the petition the lands, to the extent cultivated, were being operated by renters.

In the history of the project there have been no net returns to the land owners except during a few years of especially high rice prices. Under the reorganization setup the lands will carry an average bonded indebtedness for district purposes of approximately $14.50 per acre, and there is persuasive testimony, uncontradicted in the record, that an additional load cannot be carried, and that this burden may prove too great if agricultural conditions become less favorable. The plan is predicated on the experience of the previous five years in order to strike an average and take into consideration the quantity and value of crops produced.

Pursuant to the requirement of the loan the district excluded the 9,900 acres of non-agricultural lands. Those remaining in the district were sold for an average price of about $10.00 per acre and the proceeds were used to clear the land of the obligations of the state and of Reclamation District No. 2047 on a heavily scaled down basis, and to pay the interest coupons referred to. The excluded lands are owned jointly by the two taxing units and the state, the total burden against them amounting to more than $300,000. On hand the district has $22,000, an amount found necessary for operation, no assessments being payable until December, 1941. At the time of the hearing over 94% of the outstanding bonds had been deposited under the plan, a disbursement had been made by the R.F.C. to the depositing bondholders, and the claim of that concern had been filed. The plan was approved over the objection of appellants, who represent approximately 3.3% of the outstanding bonds.

A chief contention on the appeal is that the plan is unfair because it does not provide for the payment in full of $3,000 in bonds held by appellant Taylor. These matured August 15, 1930 and no other bonds of that maturity date are outstanding. It is said that Taylor is entitled to separate or preferred classification as a creditor. The facts on which the argument proceeds are that these bonds were presented to the district treasurer for payment in January, 1931, at which time, there being no money available to pay them, they were registered. In 1935, prior to any attempt at reorgani-

zation, the district paid two $1,000 bonds maturing subsequently to those of Taylor, and declined to pay Taylor's bonds on the mistaken supposition that they had become outlawed.

To agree with appellant's argument it would be necessary to accept the proposition that a plan is unfair if it does not undertake to rectify past errors in administration, although neither the district nor any present creditor in any way benefited from the error. We think the fairness of the plan is not to be so gauged. Possibly the holder of the Taylor bonds might have had his action in damages against the district officials for wrongful diversion of the money then available; but however that may be, two wrongs do not make a right. The Bankruptcy Act places on a basis of equality all existing creditors whose claims are payable from the same source, and in the event of bankruptcy the bonds of the district of whatever maturity, and whether they have been registered or not, are on a parity, West Coast Life Ins. Co. v. Merced Irr. Dist., 9 Cir., 114 F. 2d 654, Moody v. James Irrig. Dist., 9 Cir., 114 F.2d 685.

Appellants do not question the general fairness of the proposal to equalize the interest payments up to and including January 1, 1931. In that respect all bondholders, including appellants, are treated alike. Counsel imply that the trial court might, if it had been so minded, have ferreted out a degree of favoritism in this program; but we have been able to discover in the record nothing to indicate favoritism or overreaching.

It is claimed that the record discloses no valuation data sufficient to enable the trial court to reach a conclusion as to the fairness of the plan. There was, it is said, no appraisal of the assets of the district, no balance sheet or statement of assets or income. But remembering that the proceeding has to do, not with a private bankrupt, but with an agency of government, we think the showing was adequate and sufficiently complete. The assets to which creditors might resort consisted in this instance of such cash as the district had and its interest in the lands acquired; and of these and their worth the court was fully advised.

The burden a district is able to carry is in practice limited by the amount of the revenues it can raise through the exercise of its taxing power; and this limit is pretty definitely fixed by the ability of landowners to pay assessments. There is no disputing the fact that Provident has been wholly unable to carry its past burden; and the record is persuasive that the debt load for district purposes contemplated by the approved plan is all that the lands can reasonably bear. The conclusion to that effect was arrived at as the result of the investigations of informed and reputable witnesses who took into consideration all relevant factors—the past experience of the district over a long period of years, its assessment history, the nature of the crops which the lands are capable of producing, soil conditions, prices and production costs; and the data gathered in the course of these studies was before the court. This is not a liquidation proceeding, and if it were it is plain the bondholders would receive practically nothing.

In connection with this phase of the argument a point is made concerning the possible disposition of the lands excluded from the district, no account of which, it is said, was taken in approving the plan. Appellants suggest that these lands might be sold to the Biological Survey at prices ranging from $7 to $15 per acre. The evidence is that they are worth no more than $5 an acre with no tax obligation against them; but even if they could be sold for three times as much the sum realized would be far short of the amount necessary to discharge existing liens in favor of taxing bodies other than the district itself.

In Provident Land Corporation v. Zumwalt, 12 Cal.2d 365, 85 P.2d 116, the supreme court of the state determined that the lands acquired by this district in consequence of the non-payment of assessments were held in trust for district purposes, and that surplus rentals above the amount needed to pay operating expenses should be applied to the retirement of matured bonds in the order of their presentation. The court condemned the practice of the district of using rentals for the indiscriminate purchase of outstanding bonds, some of which had been offered and sold to the district at 20 cents on the dollar. Appellants argue on the basis of this holding that the district might continue to lease these lands, and in effect operate them for the benefit of the bondholders. They would be tax free, it is said, and altogether a rosy picture is conjured up. However, serious flaws in this program at once suggest themselves. Prior to

the reorganization the district was not sole owner of the lands; title to them was jointly in the district, Reclamation District No. 2047 and the state. We take it that all of these titles are of equal rank, La Mesa, etc., Irr. Dist. v. Hornbeck, 216 Cal. 730, 17 P. 2d 143, but under § 3773 of the Political Code of California the state would seem to have prior right to possession and the sole power to lease and to receive the rents and profits. Counsel for appellants tell us that in many districts similarly situated it is the practice of the district to take all the rentals; but as a permanent program, considered with all its implications, we are not impressed with counsel's alternative to composition.

In the main the principles underlying the questions raised by appellants have already been settled, so far as this court can settle them, in the series of cases beginning with West Coast Life Ins. Co. v. Merced Irr. Dist., supra, and including Bekins v. Lindsay-Strathmore Irr. Dist., 9 Cir., 114 F.2d 680, Moody v. James Irr. Dist., supra, Jordan v. Palo Verde Irr. Dist., 9 Cir., 114 F. 2d 691, and Newhouse v. Corcoran Irr. Dist., 9 Cir., 114 F.2d 690. We have nevertheless examined all points argued, but find no sufficient reason for reversal.

Affirmed.