### THOMAS et al. v. EL DORADO IRR. DIST.
### No. 9851.

Circuit Court of Appeals, Ninth Circuit.
March 30, 1942.

As Amended on Denial of Rehearing
May 29, 1942.

W. Coburn Cook, of Turlock, Cal., for appellants.

Thomas Maul, of Placerville, Cal., for appellee.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

El Dorado Irrigation District, the appellee, is an irrigation district duly organized and existing by virtue of the laws of the state of California, created and existing for the purpose of constructing, improving, maintaining, and operating certain ditches, canals, irrigation works and projects chiefly for the improvement of land therein for agricultural purposes. The Irrigation District comprises 30,702 acres of land, situated and located entirely within the boundaries of the county of El Dorado, state of California. The office and principal place of business is located in the city of Placerville, said county and state, and within the Northern District of California. From an interlocutory decree confirming a plan of composition for debt readjustment submitted to the court by appellee, and which had been approved and consented to by 95% of the holders of the bonds of the District, appellants, who are bondholders of some of

the bonds and who did not consent to the composition, have appealed.

The following facts were found by the trial court and are supported by the evidence:

Petitioner is an agency within the meaning and intent of the act of Congress approved August 16, 1937, amending the act entitled "An act to establish a uniform system of bankruptcy throughout the United States", approved July 1, 1898, and acts amendatory thereof and supplemental thereto, which added the new chapter formerly designated as Chapter X, but now known as Chapter IX, 11 U.S.C.A. §§ 401–404. Appellee is entitled to seek the relief offered by said Chapter IX, and pursuant to the provisions thereof it filed its petition in the District Court.

Appellee has issued 688 bonds in the sum of $688,000 which said District is obligated to pay; said sum represents the par or face value of all the outstanding bonds of the District. All of said bonds remain unpaid.

Not more than 5,000 acres of the land in this District are actually under irrigation and production; and on account of the agricultural conditions and general depression which prevailed during the greater part of the ten years preceding the filing of the petition the market value of farm products produced within said District was generally less than the cost of production; the farm operations had been unprofitable, and instalments of taxes and tax obligations levied upon real property within the District and falling due within such period together with the water tolls charged by said District for the delivery of water were greater than the ability of the land to produce or the owners thereof to pay. By reason of these facts this District was unable to collect sufficient taxes and water tolls to meet its obligations in full, and it could not meet its demands and obligations as they matured. Said Irrigation District by its petition seeks to adjust said indebtedness by composition in accordance with the plan therefor and the readjustment stated therein and attached to said petition, and it is asserted therein that it is imperative that the composition and readjustment of its debt pursuant to the above-mentioned Act be effected.

The said plan for composition and readjustment of the debt of the appellee was filed and submitted with the said petition. The plan was duly and regularly adopted by the board of directors of the petitioning District. Said plan provides for the payment of 50.5 cents on the dollar of the face value of said outstanding bonds and the sum of $33\frac{1}{3}\%$ of the face value of all outstanding coupons maturing prior to the 7th of October, 1938, and nothing for the coupons maturing subsequent to said date.

Creditors owning not less than 95% of the amount of the bonds and other evidences of indebtedness of petitioner and affected by the plan of composition and debt readjustment as proposed in said petition, have accepted said plan in writing and consented to the filing of said petition, which acceptance and consent were attached to the petition.

Said petition contains a list of all known creditors of petitioner affected by the plan of composition and debt readjustment proposed in said petition together with their addresses as far as known and a description of their respective claims, showing separately those who have accepted the plan of composition therein together with their separate addresses. Said claims are valid and are payable from the taxes levied against the land in the District by the petitioner and from water tolls collected therein, and are of a single class.

The Reconstruction Finance Corporation, an agency of the United States Government, authorized a loan to petitioner in the sum of $360,500 to enable it to fully effectuate said plan of composition and debt readjustment as set forth in said petition.

Appellants alleged and sought to prove that appellee had a full and complete remedy under the terms and provisions of the California Irrigation District Act; that appellee by the exercise of reasonable diligence was well able financially to pay the obligations owned by appellants in full and according to their terms; that the assets of the petitioner exceeded its liabilities; and also alleged that said plan of composition was inequitable, unjust, and unfair to the non-consenting bondholders and discriminated in favor of the Reconstruction Finance Corporation. Further, appellants alleged and sought to prove that large sums of money, which were trust funds belonging to these appellants and other bondholders, had been wrongfully and unlawfully diverted by appellee and its officers to the prejudice of the property rights and interest of appellants. It was also contended by appellants that said trust funds had been unlaw-

fully applied to objects and purposes other than to said trust. In addition, appellants sought to show that farming conditions within said El Dorado Irrigation District had materially stabilized as to cost of production, and marketing and prices of farm commodities since the adoption of said plan had improved and that appellee was in a position without undue burden upon the landowners in the District to meet the obligations represented by the bonds. All of said allegations the trial court found to be untrue.

The trial court found said plan to be fair and equitable and for the best interest of the creditors of said District and that said plan did not discriminate in favor of any creditor or creditors or class of creditors, and also that the acceptance of the plan by the Reconstruction Finance Corporation was made in good faith.

The assignments of error most strenuously urged are to the effect that the plan of composition herein approved by the court is unfair, inequitable, and unjust, and discriminates unfavorably against appellants.

It is asserted that appellee's bonded indebtedness of $688,000 and its warrant debt of some $24,000 are payable from the same source and are therefore classified under the Bankruptcy Act as of the same class. Appellee applied for, and was granted, a loan from the Reconstruction Finance Corporation of $360,500 for the purpose of liquidating its indebtedness. Thereupon appellee, on February 9, 1935, filed a petition in bankruptcy under the first Municipal Bankruptcy Act, approved May 24, 1934, 11 U.S.C.A. § 301 et seq. and by this means sought to compose its original bonded indebtedness and its warrant indebtedness as well. While these proceedings were pending, the United States Supreme Court in Ashton v. Cameron County District, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309, held the act unconstitutional, and the bankruptcy petition was dismissed.

Thereafter petitioner made an offer to appellants that it would endeavor to obtain an increase in the proposed loan from the Reconstruction Finance Corporation to the end that these appellants and certain other creditors who were unwilling to accept the proposed plan of composition, could secure a sum equivalent to 82½% of the principal and interest due. One of these creditors, the receiver of the California National Bank of Sacramento, accepted said compromise and received such sum. It is not altogether clear from the record whether this payment was made by the District or the Reconstruction Finance Corporation. If by the latter, this claim will be liquidated for 50½% of the total amount, the same as all other claims, and therefore, there was no preference. If the claim was paid by the District on February 5, 1937, as indicated by the record at another place, then this alleged preference payment, if such it was, occurred more than a year before the filing of the petition here being considered, and therefore would not constitute a preference under the statute. 11 U.S.C.A. § 96.

Concerning the asserted inequity and unfairness the trial court made this conclusion: "The plan as offered by the petitioner is fair and equitable and for the best interests of the creditors." The interlocutory decree, inter alia, recites: "the Court hereby finds that the opposition of said bondholders * * * [appellants being named] is not sufficient to warrant the denial of relief, and that said plan of composition being reasonable and fair should be confirmed, and that the petitioner should be authorized by law to carry out the terms of the plan of composition as submitted to this Court." The evidence sustains the findings. It is apparent from the record that the amount to be paid the bondholders of 50½ cents on the dollar is all that can reasonably be paid in the circumstances.

By other assignments of error appellants complain that "the decree must be reversed because the court did not examine all the contracts, proposals, etc., specifically for the purpose of ascertaining if the fiscal agent or other person has been or is to be compensated directly or indirectly by the petitioner and the creditors, or to determine by examination under oath whether that practice is possible, and did not make an adjudication of these issues and did not dismiss the proceedings on the ground that the practice was possible; that the court did not follow the statute in that it failed to determine whether the fees and expenses paid, if any were reasonable."

These assignments seem to be an afterthought of a recalcitrant minority, seeking by every conceivable means to block the plan of composition recommended by ninety-five percent of the creditors and approved by the court.

To begin with, the court in its interlocutory decree made this specific recital:

"that all amounts to be paid by petitioner for services and expenses incidental to the composition of its indebtedness, have been fully disclosed and are reasonable and that the offer of the plan and its acceptance are in good faith, and the petitioner is authorized by law, upon confirmation of the plan, to take all action necessary to carry out the terms thereof." This decree was entered on March 8, 1841. The record discloses no request for a different finding or any opposition to the one made. The errors assigned were filed on May 7, 1941.

To sustain their contention in this branch of their case appellants rely on American United Mutual Life Ins. Co. v. City of Avon Park, 311 U.S. 138, 61 S.Ct. 157, 159, 85 L. Ed. 91, 136 A.L.R. 860. In this case the court quite fully sets out the facts, which disclose a situation which unmistakably showed that one creditor was receiving a preference by the very plan of compromise, of which other creditors were not fully informed. "The city's composition was a refunding plan worked out by it and its fiscal agent, R. E. Crummer & Co. Pursuant to the fiscal agency contract both parties were to use their best efforts to induce the creditors to participate in the plan. The city was not to pay any of the costs of the refunding as Crummer was to defray all expenses * * *. The fiscal agency contract provided that Crummer was to be compensated for its services and reimbursed for its expenses by assessing charges against the participating bondholders. This charge was $40 for each $1,000 bond; or in case the bondholders elected to sell Crummer the interest coupons, accrued to July 1, 1937, at one-third of their face amount, the charge was to be $20 per $1,000 bond." The District Court found that two-thirds the aggregate amount of claims affected by the plan, required by the statute for confirmation, had assented. It also found that Crummer's compensation was fair and reasonable, that the plan and its acceptance were in good faith, was fair and equitable and for the best interests of the creditors, and did not discriminate unfairly in favor of any creditor. In disagreeing with this finding of the District Court the Supreme Court said:

"* * * It cannot be said that the plan does not discriminate unfairly in favor of any creditor, that the acceptances were in good faith, that the requisite two-thirds vote of approval had been obtained.

"Crummer had at least three financial stakes in this composition: (1) the fee to be collected from the bondholders; (2) its speculative position in such of the interest accruals as it might acquire from the bondholders at a third of their face amount; (3) the profit which might accrue to it or its affiliate, as a result of the refunding, on bonds acquired at default prices.

"The court found that the first of these items was reasonable. But it apparently deemed the others irrelevant to the inquiry.

"Clearly, however, no finding could be made under § 83, sub. b, 11 U.S.C. § 403 (b), 11 U.S.C.A. § 403, sub. b, that the compensation to be received by the fiscal agent was reasonable without passing on the worth of the aggregate of all the emoluments accruing to the Crummer interests as a result of consummation of the plan. Since that inquiry would necessitate an appraisal of the fiscal agent's speculative position in the plan, perhaps the definitive finding demanded by the Act could not be made. Yet that is a chance which the fiscal agent, not the bondholders, must take; for it is the agent who is seeking the aid of the court in obtaining one of the benefits of the Act. * * *." 311 U.S. at pages 143, 144, 61 S. Ct. at page 160, 85 L.Ed. 91, 136 A.L.R. 860.

"Crummer solicited assents to the plan. Approximately 69% of the bondholders accepted. But for the claims held by the Crummer interests, and voted in favor of the plan, the requisite two-thirds statutory vote, however, would not have been obtained. Some of these claims had been purchased prior to the fiscal agency contract, some later. The average price was apparently about 50¢ on the dollar. The inference seems clear that some of them were acquired in order to facilitate consummation of the composition by placing them in friendly hands. But the record does not show whether or not Crummer disclosed to the bondholders when their assents were solicited that it was a creditor as well as the city's fiscal agent, the extent of the claims held by it and its affiliate, the circumstances surrounding their acquisition, and its intent to vote those claims in favor of the plan. No such disclosure was made in the plan." 311 U.S. at pages 142, 143, 61 S. Ct. at page 160, 85 L.Ed. 91, 136 A.L.R. 860.

In setting aside the order of confirmation in the above case the Supreme Court points out that the city and its fiscal agent had entered into an undisclosed agreement whereby both parties were to use their best efforts to induce creditors to participate in the plan; that the agent had speculative inter-

est in the accruals that it might acquire from the bondholders; that it acquired claims at default prices, which it voted for the plan; that without these votes of the fiscal agent the plan would have lacked the requisite two-thirds vote for acceptance. In summing up the situation the court said at pages 144, 145 of 311 U.S., at page 161 of 61 S.Ct., 85 L.Ed. 91, 136 A.L.R. 860: "* * * where without such disclosure the fiscal agent's vote was cast for acceptance of the plan, it cannot be said that such acceptance was in 'good faith' within the meaning of § 83, subd. e (5), 11 U.S.C. § 403 (e) (5), 11 U.S.C.A. § 403, sub. e (5). Here the fiscal agent was acting in a dual capacity. While it was representing the city, it likewise purported to represent the interests of bondholders. The very minimum requirement for fair dealing was the elementary obligation of full disclosure of all its interests, and the burden was on it to show at least that such disclosure was made. Equity and good conscience obviously will not permit a finding that an acceptance of a plan by a person acting in a representative capacity is in 'good faith' where that person is obtaining an undisclosed benefit from the plan."

In the case at bar the evidence and findings disclose a very different situation. The petition of the District, the acceptance by the Reconstruction Finance Corporation, the stipulations entered into, and other exhibits make full disclosure of all matters concerning the relationship of the parties. The Reconstruction Finance Corporation, a Government agency, supplied the funds for the relief of the embarrassed debtor, to make the reorganization plan workable. The escrow agreements were all before the court. There was full disclosure. Indeed, the only omission that appellants' industrious scrutiny seems to have been able to discover, as asserted in their brief, is that the District in its petition had failed to separately state the amount of its warrant indebtedness and it is suggested that this was deliberately done in bad faith. However, this inadvertence was so evident that appellant, in reference to the omission, further says:

"It is so obvious that even the R. F. C. failed or declined to hide the fact that its 'acceptance' of the plan embraced the plan of warrant liquidation. * * * The Court authorized the 'purchase' of the warrants as well as the bonds. The plan of composition, if any, still explicitly includes the warrants."

■ The vehemence with which these assignments are argued might lead to the belief that appellants would suffer injury because of this alleged failure of the trial court; but as we have pointed out, the court did make the finding as indicated. But even if this had been omitted, appellants would not be injured by any such inadvertence because the amounts they were to receive were definitely fixed by the plan, accepted, and confirmed, and any fees and costs would not diminish their awards.

The decree finally recites that "the costs and expenses of these proceedings, including a reasonable attorney's fee of ..... dollars to petitioners' attorney for services in these proceedings, be taxed against the petitioner herein." The implication is that these costs and expenses are the amounts due for court costs, and as to the "reasonable attorney's fee", the following statement from appellants' brief makes this observation: "Appellants feel sure that Mr. Maul's fees, if any, were very reasonable, although there is no evidence on the subject." In any event, the interlocutory decree, as disclosed by the record, awards the attorney nothing.

■ Assignments of error that the plan of composition violates the Fifth Amendment to the Constitution, that it violates local law, and that the carrying out of the plan is not authorized by local law, and other minor assignments not argued have all been decided by this court adversely to the contentions of appellants. See Bekins v. Lindsay-Strathmore Irr. Dist., 114 F.2d 680; West Coast Life Ins. Co. v. Merced Irr. Dist., 114 F.2d 654; Jordan v. Palo Verde Irr. Dist., 114 F.2d 691; Moody v. James Irr. Dist., 114 F.2d 685; Mason v. Merced Irr. Dist., 126 F.2d 920, March 21, 1942; Mason v. Anderson-Cottonwood Irr. Dist., 126 F.2d 921, March 21, 1942.

■ Finally, appellants contend that at the time of the filing of the petition, and of the hearing, and of the entry of the interlocutory decree, the appellee was not insolvent or unable to pay its debts as they mature. The District Court made this explicit finding: "That by reason of the inability of the petitioner to collect sufficient taxes and water tolls to meet its obligations in full it has been and is unable to meet its demands and obligations as they mature or will mature * * *." The evidence sustains this finding. Newhouse v. Corcoran Irr. Dist., 9 Cir., 114 F.2d 690.

Affirmed.