[S. F. No. 14322. In Bank.—November 30, 1932.]

LA MESA LEMON GROVE AND SPRING VALLEY IRRIGATION DISTRICT, Petitioner, v. E. A. HORNBECK et al., Respondents.

[S. F. No. 14323. In Bank.—November 30, 1932.]

GLENN–COLUSA IRRIGATION DISTRICT, Petitioner, v. H. D. WYLIE et al., Respondents.

[S. F. No. 14324. In Bank.—November 30, 1932.]

MERCED IRRIGATION DISTRICT, Petitioner, v. F. R. HENDERSON et al., Respondents.

Albert J. Lee, Stearns, Luce & Forward, Hankins & Hankins, Downey, Brand & Seymour, A. L. Cowell, T. C. Boone, C. L. Childers and H. J. Hankins for Petitioners.

Bronson, Bronson & Slaven and Harold R. McKinnon, *Amici Curiae* on Behalf of Petitioners.

Thomas Whelan, District Attorney (San Diego County), Frank T. Dunn, Chief Deputy District Attorney, E. J. Kendall, Deputy District Attorney, Herbert C. Kelly, Milton M. Hogle, District Attorney (Glenn County), Duard F. Geis, F. M. Ostrander, District Attorney (Merced County), and Stephen P. Galvin and Arthur C. Shepard, Deputies District Attorney, for Respondents.

Everett W. Mattoon, County Counsel (Los Angeles County), J. H. O'Connor, Assistant County Counsel, Elmer W. Heald, District Attorney (Imperial County), S. L. Mc-Crory, Deputy District Attorney, W. Earl Redwine, District Attorney (Riverside County), George A. Franch, Deputy District Attorney, W. H. Orrick and Orrick, Palmer & Dahlquist, *Amici Curiae* on Behalf of Respondents.

PRESTON, J.—The following quotation from our former opinion in this cause furnishes a sufficient statement of facts for the purposes of this discussion:

"The above-named irrigation districts have severally petitioned this court for writs of mandate directing the board of supervisors and district attorneys of San Diego, Glenn and

Merced counties to make and approve orders canceling certain described taxes, assessments, tax sales and tax deeds. It is alleged by petitioners and admitted by respondents, that in each case the petitioning irrigation district has acquired certain parcels of real property, described in the respective petitions, pursuant to sales for delinquent assessments under the provisions of sections 47 and 48 of the California Irrigation District Act as amended in 1927. (Stats. 1927, pp. 190, 191.) It further appears that in each case at the time that such properties were acquired by said irrigation districts various county taxes and special assessments had been levied against said properties, and had not been paid. Petitioners contend that they are entitled to have all of these county taxes, special assessments and the tax sales and deeds based thereon canceled under the provisions of section 3804a of the Political Code as amended in 1925. (Stats. 1925, p. 431.) Respondents contend that petitioners are not entitled to the cancellation of the county taxes and special assessments and the tax sales and deeds based thereon under the provisions of section 3804a of the Political Code, or under any other statutory or constitutional provisions.

"Inasmuch as the three petitions involve similar points of law, by stipulation of the parties the three cases have been consolidated for hearing. The various types of claims which petitioners contend they are entitled to have canceled can be briefly summarized as follows:

"In proceeding numbered S. F. No. 14324 the property described in the petition was transferred to the irrigation district, after a sale for delinquent assessments, by a deed dated January 20, 1931, which deed was recorded January 26, 1931. The claim of the state is based upon a tax sale at which the described parcel was sold to the state on July 3, 1929, for delinquent county taxes. No deed has issued to the state in reference to this property.

"In proceeding numbered S. F. 14323 several parcels are involved. The parcels referred to in the petition as parcels I and IV were transferred to the irrigation district, after a sale for delinquent assessments, by deeds dated September 4, 1930, which deeds were recorded September 26, 1930. Parcel I was sold to the state for delinquent county taxes on August 28, 1926. Parcel IV was sold to state for delinquent county taxes on August 24, 1926. No deeds have issued to

the state in reference to these properties. Parcels referred to in the petition as parcels II and III have not only been sold to the state for delinquent county taxes, but deeds have issued to the state as provided in section 3785 of the Political Code. Both parcels were transferred to the irrigation district, after a sale for delinquent assessments, by deeds dated September 4, 1930, which deeds were recorded September 26, 1930. The deed to the state in reference to parcel II is dated June 30, 1926, while the deed to the state in reference to parcel III is dated June 29, 1928.

"In procceding numbered S. F. 14322 the property described in the petition was transferred to the irrigation district, after a sale for delinquent assessments, by a deed dated September 25, 1928, which deed was recorded August 17, 1929. The claim of the state is based upon a tax sale at which the described parcel was sold to the state on June 29, 1929, for delinquent county taxes. No deed has issued to the state in reference to this property. In addition to the general county tax the parcel involved in this proceeding was likewise subject to an assessment under the Acquisition and Improvement Act of 1925, and was also subject to a further assessment levied by a fire protection district under the authority conferred by the statutes of 1923, p. 431. It appears that both of these special assessments were levied at the same time and as part of the levy for county purposes generally."

Petitioners, claiming to be the *alter ego* of the state by virtue of the several deeds to them, of the properties described, for delinquent assessments, invoke the provisions of section 3804a of the Political Code, *supra*, and seek to compel a cancellation of all liens, certificates of sale and deeds representing delinquent county and other taxes on said properties. Said section 3804a reads, so far as here material, as follows:

"Any uncollected tax, or assessment, or portions thereof, or penalty or costs thereon, heretofore or hereafter assessed, charged or levied . . . . upon an assessment of property which after the time said tax or assessment became a lien was acquired and owned by the state, or by any county, city and county, municipal corporation, school district or other political subdivision and which, because of such public ownership, is not subject to sale for delinquent taxes, may, upon

satisfactory proof thereof, be canceled by the officer having custody of the record thereof upon the order of the board of supervisors, or other governing board with the written consent of the district attorney, city attorney or legal adviser of said board; provided, that no cancellation shall be made of such charges on property exempt from taxation in event of failure to comply with the provisions of law, if any, relative to the manner of claiming such exemptions. . . . If real property has been sold to the state or other subdivision for nonpayment of any tax levied as described in this section, and a certificate of sale or deed therefor has been issued to the state, or other subdivision and the state or other subdivision has not disposed of the property so sold, the order of the board shall also direct the officer having custody of the record thereof to cancel the certificate of sale or deed so issued.''

Petitioners further urge in support of their claims the provisions of section 48 of the California Irrigation District Law (Deering's Gen. Laws, vol. 2, p. 1991, Act 3854), which at all times herein mentioned provided that ''the deed conveys to the grantee the absolute title to the lands described therein free of all encumbrances. . . . '' Petitioners also note that since 1927 (Stats. 1927, p. 190) section 47 of said irrigation law (Deering's Gen. Laws, vol. 2, p. 1990, Act 3854) has provided: ''Where property has been sold to the district and a deed for it has been given to the district as the purchaser, such district shall have the same rights thereto, and to the rents, issues and profits thereof, as a private purchaser. The title so acquired by the district may be conveyed by deed, executed and acknowledged by the president and secretary of the board of directors; provided, that authority to so convey must be conferred by resolution of the board entered on its minutes fixing the price at which such sale may be made.''

At a glance it will be seen that petitioners' position assumes precedence over all other public corporations as well as counties and municipalities and moreover it impairs to some extent at least the functions of all these other agencies. It takes from one and gives to another. Counties and municipal corporations in particular have in charge the property, the liberty and the general welfare of the citizens and are supported solely by taxation. The position of peti-

tioners, if sustained, would require these functions to be waived in favor of a public agency which owes no duty as to any of them, but on the contrary is an organization which subsists upon assessments imposed upon the properties of the district in theoretical return for betterments or benefits received. We are not unmindful, however, of the rightful place in our system which we have freely accorded to utility, irrigation, reclamation, water storage and various other districts which are state agencies for public purposes. We realize also the solicitude of the legislature of the state at all times for their well being. But we must examine with great care the construction of a statute which, it is claimed, places these institutions above the governmental and political bodies above mentioned, which are indispensable to our safety and prosperity. We think it well to refer to a few of the underlying principles that should guide us in reaching a conclusion as to the meaning of this statute.

First, it is well settled that in the absence of a statutory or constitutional provision a distinct priority exists in favor of general taxes over special assessments of every kind. (*Dougherty* v. *Henarie*, 47 Cal. 9; 26 R. C. L., p. 404, sec. 361; *State* v. *Board of Commrs.*, 89 Mont. 37 [296 Pac. 1].) The reason for this rule is well stated in *Robinson* v. *Hanson*, 75 Utah, 30 [282 Pac. 782, 784], as follows: "We are not dealing with claims of intrinsic equality. The claim for the necessary support of government is a higher obligation than the demand for the costs of a local improvement, even though the latter has *quasi* public features. The first and paramount necessity for social order, personal liberty, and private property is the maintenance of civil government; and government cannot exist without revenues. The necessity and importance of preferring the lien for general taxes over other claims are so impelling that the priority of the sovereign claims of the state will not be depreciated or denied without warrant from the legislature in clear and unmistakable terms; and we find no such warrant from the legislature. The provisions of the statute upon the subject are not inconsistent with the priority of the right of the state to its necessary revenues."

Again, in the case of *Missouri Real Estate, etc.*, v. *Burri*, 202 Mo. App. 242 [216 S. W. 570, 571], it is said: "It must be conceded that a general tax, which has primarily for its

object the support of the government, whereby the government may exist, and lives and property may be protected and the pursuit of happiness guaranteed, is of greater dignity and more importance than a tax bill issued for public improvements. It is true that a general tax is frequently levied for public improvements. But it is not feasible to levy a special tax, of the nature here involved, for what we understand to be meant by the expression, 'support of the government'. We can subsist without the special tax, but no civilized government could be organized and maintained without the general tax. So we conclude that the general tax, being first in vital importance, should be allowed first place in the means of payment.''

■ As a corollary to the above proposition it may be stated that every presumption is against the legislative intent to prefer the lien of special assessments to those of general taxes. In *Re Dancy Drainage Dist.*, 199 Wis. 85 [225 N. W. 873–876], the court says: ''We shall not attempt to review the authorities bearing upon this question, because in our view the lien for general taxes is of a distinctly higher order than the lien of any special assessment, and we should not construe any statute as giving precedence to the lien of any special assessment over the lien of general taxes in the absence of a plain legislative command.'' It may also be noted that in the absence of clear statutory provisions to the contrary a general tax lien is not only superior to an assessment lien but a deed executed in the enforcement of the general tax lien will destroy the assessment lien and, conversely, a deed executed in the enforcement of an assessment lien will not extinguish a general tax lien.

In the light of these propositions we pause to ascertain whether or not the legislature of California has spoken upon the question of the relative priority of general taxes and special assessment liens. We note that under section 3788 of the Political Code as originally enacted in 1872 there was no mention made of liens or special assessments and a deed to the state at that time would no doubt have been construed as extinguishing liens for special assessments. Later, however, section 3788 became section 3787 and in the year 1913 (Stats. 1913, p. 559) this section was redrafted so as to except from its operation a lien of taxes levied for municipal purposes. Later, and in 1917, this section was again

amended so as to except not only a lien for municipal purposes but for irrigation district purposes as well. Later, and in 1927 (Stats. 1927, p. 1666) the section was again amended so as to specially except a lien for reclamation, protection, flood control, public utility and other district purposes. This section has been construed by our own appellate court and by the Supreme Court of at least one other state which has enacted it into their law, from which it is concluded that the legislative intent is to place all taxes, both for county, municipal and other governmental agency purposes and taxes in the form of assessments in favor of special agencies of the state upon an equal footing before the law. (*Bolton* v. *Terra Bella Irr. Dist.*, 106 Cal. App. 313 [289 Pac. 678]; *State* v. *Board of Commrs., supra.*)

From the above authority and upon our construction of the section we may now safely conclude that under our system of taxation liens in favor of county and municipal corporations and special assessments, under the authority of state agencies for public purposes, are all on an equality. By this is meant that in case of delinquency a deed to any one of these agencies for such taxes will not obliterate the existing liens on the property in favor of any or all of the others unless, indeed, said section 3804a compels a different conclusion.

We shall now examine this section itself to see if it compels a disruption of said parity. To permit one state agency to compel a cancellation of all such liens existing in favor of another such agency is to declare an unequal rank between their respective positions. The party procuring the cancellation must be in the stronger position. How can this be if both parties rest their claims upon tax liens or tax deeds? There is but one answer. The property must be impressed with the public purpose committed by law to the applicant so that as a consequence it may not be sold for delinquent taxes. (*Reclamation Dist.* v. *Superior Court*, 171 Cal. 672, 679 [154 Pac. 845]; *Smith* v. *Santa Monica*, 162 Cal. 221, 222 [121 Pac. 920].) There is no room for operation of the doctrine of merger of the liens in the tax deed. This construction would allow a public agency of the state to compel a cancellation of existing liens upon property only when impressed with the public trust committed to it. This

is logical because in such case to collect the tax is to take money from one arm of the state and transfer it to another.

If this position is not sound, then the tax deed first in time would be first in right and this is in diametrical opposition to petitioners' position, as they claim that a later deed destroys an earlier one. Moreover, the law recognizes a distinction between property impressed with a public purpose and property of an agency not so impressed, for in the latter instance the property may be sold for delinquent special assessments levied by other agencies or may be affected by adverse possession and other burdens of private property. (*San Diego* v. *Linda Vista Irr. Dist.*, 108 Cal. 189 [35 L. R. A. 33, 41 Pac. 291]; *City Street Improvement Co.* v. *Regents*, 153 Cal. 776, 779 [18 L. R. A. (N. S.) 451, 96 Pac. 801]; *City of Inglewood* v. *County of Los Angeles*, 207 Cal. 697 [280 Pac. 360]; *City of Monterey* v. *Jacks*, 139 Cal. 542, 551 [73 Pac. 436]; *Los Angeles County* v. *Hunt*, 198 Cal. 753 [247 Pac. 897]; *United Taxpayers* v. *San Francisco*, 202 Cal. 264, 266 [259 Pac. 1101]; *Southlands Co.* v. *San Diego*, 211 Cal. 646, 668 [297 Pac. 521].)

These and many other observations that might be made seem clearly to disclose a legislative intent to allow a cancellation in favor of only such public corporations and public agencies as have caused the property in question to be impressed with a public trust. It requires no argument to conclude that tax title property is not so impressed. Such titles are taken to secure the revenue required and the property is for resale, not for permanent public use. If the state desires to put such property to a public use a process for this purpose must be undergone (Pol. Code, secs. 3897a and 3897b).

We can accord no controlling weight to the contention in this connection that petitioners have tax titles which do not permit of redemption by the property owners and for that reason are in a superior position to the governmental arms of the state which give the property owner a right of redemption at any time before sale (Pol. Code, sec. 3785a). But the statute under review is not made for irrigation districts alone; it provides for a cancellation where the property is owned by the state or any of its agencies and the ownership is of such a character that it may not be sold for delinquent taxes or

assessments. Moreover, sections 47 and 48 of the irrigation law do not specifically declare that such title extinguishes the claim of all other agencies of the state. The rule of law that the state may not be thus precluded without specific provisions to that effect is well established. (*Kubach Co.* v. *McGuire,* 199 Cal. 215 [248 Pac. 676]; *City of Inglewood* v. *County of Los Angeles, supra.*)

These citations also dispose of the claim that under section 48 of the irrigation law the title to the district is ''free of all encumbrances'' and thus the state is precluded. This position is clearly untenable. We need not pause to consider the nature of the state's title to nonoperative lands standing in the name of an irrigation district nor whether such title is stronger or weaker than that of other state agencies, nor need we pause to examine the constitutional objections made by respondents to the construction urged by petitioners of said statute. It is sufficient for the purposes of this cause to hold that land deeded to a state agency for delinquent taxes or assessments does not *ipso facto* necessarily destroy existing liens in favor of other state agencies or merge them into the tax deed; and, further, to hold that such liens are extinguished or merged only when necessary to protect prop-·erty impressed with a public use. This construction of said section harmonizes with other provisions of the Political Code on the same subject and also with cognate provisions in the special acts under which the varied types of public corporations existing in this state operate.

Neither is it necessary to re-examine the holding in *San Francisco* v. *McGovern,* 28 Cal. App. 491 [152 Pac. 980], or *State Land Settlement Board* v. *Henderson,* 197 Cal. 470 [241 Pac. 560], or to question the decision in *Turlock* v. *White,* 186 Cal. 183 [17 A. L. R. 72, 198 Pac. 1060]. None of these cases deal with the question now before us.

Property impressed with a public use, standing in the name of an irrigation district, cannot be assessed or sold for delinquent general taxes. Whether nonoperative property or property held under a mere tax title and not devoted to the public use may be assessed is not here involved. Section 1, article XIII, of the Constitution, defining what property may be assessed for taxes, speaks prospectively, and when a cause arises where such property of an irrigation district,

or other agency, is assessed for general taxes, we can then, if required, treat that specific question.

The several petitions are denied.

Shenk, J., Curtis, J., Tyler, J., *pro tem.*, Waste, C. J., and Seawell, J., concurred.

Langdon, J., deeming himself disqualified, did not participate herein.

Rehearing denied.