STEELE *v.* CITY OF WAYCROSS *et al.*

No. 13395.   SEPTEMBER 26, 1940.

*Herbert W. Wilson* and *Harry M. Wilson,* for plaintiff.

*Q. L. Garrett* and *Frank B. McDonald Jr.,* for defendants.

DUCKWORTH, Justice. The first question to be determined is whether the sale of the property under the execution for general municipal taxes had the effect of extinguishing the lien of the special assessment. This assessment was levied by the City of Waycross in pursuance of an amendment of its charter enacted by the General Assembly in 1925. Ga. L. 1925, p. 1557. The act was patterned after what is known as the Oklahoma paving plan, whereby bonds are issued and sold to defray the cost of street improvements, the abutting property is assessed for the purpose of paying the bonds, and the city is made the collecting agency of the bondholders. Section 7 of that act, after providing for appraisement and apportionment of the assessments against the abutting property, declares that "the charges assessed against the various parcels of land shall become a first lien thereon, superior to all other liens except those to the State of Georgia, the County of Ware, and the City of Waycross." Section 9 is as follows: "Such special assessment and each installment therefor and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the ordinance levying the same, coequal with the lien of other taxes and prior to and superior to all other liens against such lots or tracts, and such liens shall continue until such assessment and interest thereon shall be fully paid; but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty." Thus it will be seen that by section 7 the assessments are made superior to all other liens except those for taxes to the State, county, and municipality. However, this section merely declares that the assessment lien is not superior to the liens of the State, county, and municipality; and it can not be construed to mean that the assessment lien is inferior to those liens, as contended by the plaintiff. Section 9 fixes the relative priority of the liens, by declaring that the lien

of the assessments is coequal with the lien of other taxes. Code § 92-5708, dealing with the priority of general tax liens, is in part as follows: "Liens for taxes, whether ad valorem, specific, or occupation, due the State, any county thereof, or municipal corporation therein, shall cover the property of taxpayers liable to tax, from the time fixed by law for valuation of the same in each year until such taxes are paid. . . Such liens for taxes are hereby declared superior to all other liens, and shall rank among themselves as follows: first, taxes due the State; second, taxes due the counties of the State; third, taxes due to municipal corporations of the State." Certainly, under this section, the lien of the general municipal tax would have been superior to the lien of the special assessment if the charter amendment of 1925 had not provided otherwise. The charter amendment, however, clearly stated that the lien of the special assessment provided for therein should be "coequal" with the liens of other taxes. It is well settled that in the absence of constitutional restrictions the legislature may determine the respective priority of liens for general taxes and special assessments. See 61 C. J. 932, § 1193; Cascade County v. Weaver, 108 Mont. 1 (90 Pac. 2d, 164). It not being contended that the charter amendment is unconstitutional for any reason, full effect must be given to its provisions.

While the relative priority of the tax and special-assessment liens is a matter for legislative determination, it may be well in this connection to note some factors which may have influenced the legislature to make these liens coequal. "Though assessments for local improvements are not taxes within the meaning of the requirement of the constitution that taxes must be ad valorem and uniform, nevertheless assessments for local improvements, such as street paving and sewerage, are an exercise of the taxing power." *Georgia Railroad & Banking Co.* v. *Decatur,* 137 *Ga.* 537 (73 S. E. 830, 40 L. R. A. (N. S.) 935). In *City of Brunswick* v. *Gordon Realty Co.,* 163 *Ga.* 636, 641 (136 S. E. 898), it was said: "No reason appears why an execution issued in pursuance of a taxing power for public convenience and the public good should not be classed as an execution issued for taxes in the general sense. . . The city might, if it sees proper, raise money by direct taxation for the specific purpose of making street improvements; and the fact that by the method of assessment under the provisions of its

charter it imposes the burden upon the property-owner whose property would be benefited by the improvement does not divest the proceeding of the city, in issuing and levying the execution, of its character as an exercise of the taxing power." Furthermore, it should be remembered that special assessments have been upheld on the theory that the property charged with the assessment receives a corresponding benefit from the improvements; that is, that the property assessed will be enhanced in value to the extent of the burden imposed. Theoretically then, when such improvements are made the taxable resources of the municipality have been increased. Since the public improvement for which the assessment is levied adds to the taxable value of the property, it can hardly be said that there is no good reason for making the lien of this assessment equal to the lien of general taxes against the property thus enhanced in value.

Since under the statute the special assessment and general tax liens were of equal dignity, did the sale under the general tax executions divest the lien of the special assessment? We are of the opinion that it did not. To hold that this sale divested the lien of the special assessment would amount to a denial of the equality provided for in the act. It is urged that the equality clause means that a sale to enforce one lien divests the other, but that both are entitled to share equally in the proceeds from the sale. The act is not subject to such a construction. The legislature has provided no machinery for the collection of all taxes due by one sale. The act under which the assessment was levied made no provision for its enforcement in case the property was sold for some other tax claim. Certainly some provision would have been made if it was contemplated that a sale for general taxes would divest the lien of the special assessment, many of the installments of which might not even be due at the time of the sale. Under the act future installments of the assessment are not affected by the sale of the property for past-due installments. It also provides that the lien of the special assessment "shall continue until such assessment and interest thereon shall be fully paid." This, we think, means that the lien can be discharged only by payment; and that it will not be discharged by a sale of the property for the purpose of satisfying other liens of equal rank. Our conclusion is that the lien of the special assessment is equal to that of general municipal taxes of the

City of Waycross, and that a sale to enforce the latter leaves the other standing against the property. Courts of other jurisdictions in dealing with statutes similar to those here under consideration have reached decisions supporting this conclusion. See Bolton *v.* Terra Bella Irr. Dist., 106 Cal. App. 313 (289 Pac. 678) ; La Mesa Lemon Dist. *v.* Hornbeck, 216 Cal. 730 (17 Pac. 2d, 143) ; Neary *v.* Peterson, 1 Cal. 2d, 703 (37 Pac. 2d, 82) ; Walton *v.* Portales, 42 N. M. 433 (81 Pac. 2d, 58) ; City of Sanford *v.* Dial, 104 Fla. 1 (142 So. 233) ; Runnells *v.* Citizens' National Bank, 157 Okla. 94 (11 Pac. 2d, 173). The decision last cited deals with the statute after which the Waycross act is modeled, and accords with this decision.

■ The City of Waycross was the purchaser at the sale referred to above, and duly obtained a deed to the property. Under the foregoing rulings, the plaintiff would have obtained the property subject to the lien of the special assessment if he had been the purchaser. However, he now contends that by a quitclaim deed from the city he obtained a better title than he could have procured at the sale at which the city was the purchaser. This is based on the fact that the deed was silent as to the assessments, which it was the duty of the city to collect as the agent of the bondholders. The Code, § 92-4404, dealing with the alienation of property purchased by municipal corporations at tax sales, states: "Neither the governing body of any such municipal corporation during whose term any such sale shall take place, nor any subsequently appointed or elected governing body, shall be capable of divesting or alienating the title of the corporation to any property so purchased, except by a public sale of the same to the highest bidder." The deed to the plaintiff was not made in pursuance of a public sale as provided in this section. It was made before the owner's period of redemption had expired, and it is not altogether clear that the city was authorized to make a sale of any kind during this period. Nevertheless the city since the date of the quitclaim deed has treated the plaintiff as the owner of the property, and now claims only the right to enforce the lien of the assessment against it; and for this reason we shall deal with the case as if the deed had been executed in pursuance of a sale made in compliance with the Code, § 92-4404. The title acquired by a municipal corporation by purchasing property at its tax sale "shall be perfect, valid and binding, after the

period above provided for redemption by the owner shall have elapsed and there is no redemption by the owner, as if purchased by an individual or corporation other than such corporation so purchasing." Code, § 92-4403. The title acquired by the city at the tax sale was the same as that any individual would have obtained; that is, it obtained title subject to the lien of the special assessment. It was authorized to convey no better title than it held. It could not by merely reselling the property divest the lien of the assessment; for to allow this would provide a method for vitiating the provision making this lien "coequal" with the lien of other taxes. This would allow the city by first enforcing its general tax liens to effectively give precedence to such claims, in violation of the terms of the law. Under the law the quitclaim deed could convey only a title subject to the lien of the assessment. The plaintiff was under a duty to take notice that this was the extent of the authority to convey. Code, § 89-903. It appeared from the evidence that the plaintiff had actual knowledge of the assessment at the time of his purchase, and that he did not then think that the deed divested the lien. In fact it is apparent that the only purpose of the deed was to place the plaintiff in the shoes of the city as the purchaser at the tax sale. He paid only the amount which the city had paid at the sale. Thus he is without any reason for asserting estoppel against the city. While it is true that the city was the agent for the collection of the annual installments of the assessment, no effort was made to enforce the collection thereof in connection with the transfer to the plaintiff. The city as such agent was authorized to divest the lien only upon receipt of payment. There is no merit in the contention that the city is estopped from enforcing the special assessment, by reason of the terms of the quitclaim deed.

■ The plaintiff insists that the city is barred by laches from attempting to enforce the assessment lien, because it waited for about seven years after his purchase before having the property levied upon. He thus seeks to make the laches of the defendant the basis for the grant of equitable relief in his favor. This can not be done. The Code, § 3-712, declares that "courts of equity may interpose an equitable bar, whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." The provisions of this section

are not available to the "complainant." "The principle that a stale demand will not be enforced is peculiarly applicable to equity practice, is available to the defendant only, and can not be employed by the complainant in an equitable proceeding to enjoin the enforcement of a purely legal right." *Georgia Railroad & Banking Co.* v. *Wright,* 124 *Ga.* 596 (18), 620 (53 S. E. 251).

■ There is no merit in any of the other contentions by the plaintiff. The evidence demanded the verdict for the defendant, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*