[Civ. No. 6806. Third Dist. June 19, 1942.]

SUTTER-YUBA INVESTMENT COMPANY (a Corporation), Petitioner, v. HELEN WASTE, as County Auditor, etc., Respondent.

Rich & Weis and F. E. Carlin for Petitioner.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, A. A. Kragen, Deputy Attorney General, Joseph L. Heenan, District Attorney, and A. S. Powell, Deputy District Attorney, for Respondent.

THE COURT.—This is a petition for a writ of mandamus to require the respondent to compute the amount of delinquent assessment taxes necessary to redeem real property belonging to Sutter-Yuba Investment Company, and upon payment thereof to issue to it the certificate of redemption as provided by section 4105 of the Revenue and Taxation Code of California, formerly section 3817 of the Political Code. The particular issue to be determined is whether the respondent may compel the owner of the real property to pay county taxes which were levied against the land in 1938, 1939 and 1940, while it was owned by Reclamation District No. 784, an

agency of the State of California, as a prerequisite to the right of redemption.

The petition alleges that Sutter-Yuba Investment Company is a corporation which owns lot 3, section or block 12, of Farm Land Colony No. 1, in Reclamation District No. 784, in Yuba County, California, according to the map thereof on file in the recorder's office of that county. It further asserts that Reclamation District No. 784 was organized pursuant to law prior to January 1, 1921; that on said last-mentioned date the district was authorized to, and it did issue bonds in the aggregate sum of $834,000, secured by the lands within the district, as provided by section 3480 of the Political Code; that assessments were subsequently levied against said lands in the manner required by law, for the purpose of paying the principal and interest on said bonds as they matured; that the assessment against said lot No. 3 was not paid within the time allowed by law, and it became delinquent; that the county treasurer of Yuba County thereafter published notice of said delinquency and of the time and place of sale of said lot to satisfy the lien as required by section 3466 of the Political Code; that at said time and place of sale no other offer of purchase was made, and the county treasurer, as trustee for said district, then bid in the land for the full amount of the delinquent installment of taxes plus the interest and penalties provided for by law, and, on June 15, 1932, he issued and recorded the certificate of sale thereof; that after the expiration of the time allowed by law, no redemption of the land having been made, the county treasurer, on February 3, 1936, executed and recorded a deed thereof to himself "as Trustee" for said reclamation district, in accordance with said statute; that thereafter, by authorization of the board of directors of the reclamation district, the county treasurer, as trustee thereof, sold said lot at public auction, and conveyed the title to this petitioner, Sutter-Yuba Investment Company, on October 15, 1940.

It is further alleged that subsequent to the execution of the deed to lot No. 3, to the County Treasurer of Yuba County, as trustee of the reclamation district, on February 3, 1938, and while said lot was in fact owned by said district, the County Assessor of Yuba County illegally assessed said lot and levied county taxes against it for the years 1938, 1939 and 1940, no part of which was paid; that on March 18, 1942, on petition of the trustee of the reclamation district, and upon

satisfactory proof of the invalidity of the said assessments, the Board of Supervisors of Yuba County, by resolution duly adopted, cancelled said levies of county taxes, as authorized by section 4986 of the Revenue and Taxation Code, on the theory that the assessments against the reclamation district, as an agency of the State of California, were void under article XIII, section 1, of the Constitution of California.

The Sutter-Yuba Investment Company thereupon demanded of this respondent, as auditor of Yuba County, a statement of the amount of unpaid legal assessments against said land, necessary to procure redemption from the second installment of taxes for 1937, which was acknowledged to be a valid lien on said lot, and then tendered the sum of $20.26 in full payment thereof, claiming that the subsequent assessments of county taxes for 1938, 1939 and 1940 were illegally levied, and that they were cancelled by the board of supervisors. That tender was refused.

The petition for a writ of mandamus prays that the auditor of Yuba County be required to estimate, as required by law, the amount of delinquent taxes necessary to redeem said land, which are a valid lien thereon, and that upon payment thereof the respondent be required to issue and deliver to the petitioner a certificate of redemption of said land free and clear of said invalid assessments of county taxes for the years 1938, 1939 and 1940.

The respondent filed a demurrer to said petition on the ground that it fails to state facts sufficient to authorize the issuance of the writ.

█ We are of the opinion the petition states a cause of action justifying the issuance of the writ of mandamus.

Real property which has been sold for delinquent assessments may be redeemed by the original owner or by any successor or party in interest. (§ 4101, Rev. & Tax. Code, formerly § 3780, Pol. Code.) The County Treasurer of Yuba County was authorized by section 3466 of the Political Code to, and he did, take title to the lot in question, as trustee for the reclamation district, by deed dated February 3, 1936. That deed conveyed title to the treasurer, as trustee for the reclamation district, as provided by the seventh paragraph of the last-mentioned section, "free of all liens and encumbrances *except any prior or subsequent district assessment.*" At the time of that conveyance to the treasurer as trustee, there was but one delinquent district assessment. No subsequent district

assessment was levied against the property. No county taxes had then been assessed against the property. Indeed none could legally be assessed against the land for it was then the property of a reclamation district, which is an agency of the State of California. Pursuant to the authorization of the board of directors of Reclamation District No. 784, and in accordance with said section 3466, the treasurer, as trustee, sold and conveyed the lot to this petitioner, Sutter-Yuba Investment Company, by deed dated October 15, 1940. The petitioner took title to that property "free and clear of all liens and encumbrances *except any prior or subsequent district assessment.*" The last paragraph of the last-mentioned section provides in that regard:

"Any parcel of land bid in and purchased by a county treasurer as aforesaid, as trustee of the district, may be sold and conveyed by him or his successors in office, at any time after the expiration of said redemption period at public or private sale, and with or without notice, to any person paying him the amount for which said parcel was bid in by said county treasurer at delinquent sale, with interest thereon at the rate of seven per cent per annum, compounded yearly from the date of said delinquent sale together with any call that has been made upon any prior or subsequent assessment; *and the deed executed by the county treasurer* in pursuance of such sale *shall convey said property free of all liens and encumbrances except any prior or subsequent district assessment.*"

After the treasurer acquired title to the property, as trustee for the reclamation district, in February, 1936, and before the lot was sold and conveyed to the petitioner, Sutter-Yuba Investment Company, in October, 1940, the County Assessor of Yuba County illegally assessed the lot for county taxes, for the years 1938, 1939 and 1940.

The board of supervisors, upon satisfactory proof that the county taxes which were levied against said lot for the years 1938, 1939 and 1940, was authorized to, and it did cancel those assessments as illegal and void. These assessments were deemed to be void for the reason that the real property was then owned by Reclamation District No. 784, which was an agency of the State of California, and therefore exempt from such taxes, under the provisions of article XIII, section 1, of the Constitution. (§ 4986, Rev. & Tax. Code, formerly § 3804a, Political Code.) Reclamation districts are agencies of

the state. (*Hensley* v. *Reclamation Dist. No. 556*, 121 Cal. 96 [53 Pac. 401] ; *Housing Authority of County of Los Angeles* v. *Dockweiler*, 14 Cal. (2d) 437, 453 [94 P. (2d) 794] ; *Reclamation Dist. No. 551* v. *County of Sacramento*, 134 Cal. 477 [66 Pac. 668] ; *River Farms Co.* v. *Gibson*, 4 Cal. App. (2d) 731, 744 [42 P. (2d) 95] ; 24 Cal. Jur. 102, § 85.) It has been held that the property acquired by a reclamation district, as an agency of the state, is state-owned property and therefore exempt from taxation. In the case of *Reclamation District No. 551* v. *County of Sacramento, supra*, it was said in that regard, at page 479:

"The whole scheme of reclamation originates with the state, and is carried to a conclusion by agents of the state,—the district, as we have already seen, being a public agency—in furtherance of public policy. The property mentioned in section 3471 of the Political Code is public property, acquired by the agents of the state, for state purposes, and we think is exempt from taxation, as such."

In the preceding case from which we have last quoted, the county of Sacramento levied and collected county taxes, which were paid under protest, upon a pumping plant and an irrigation system which were constructed upon land owned by the district. Suit was brought by the reclamation district to recover the taxes paid under protest, and to declare the county assessment void. A demurrer to the complaint was overruled, and the defendant declined to answer. Judgment was rendered accordingly. From that judgment the county appealed. This court held that the district was exempt from county taxes, and affirmed the judgment, saying:

"To allow the county to assess the works—i. e., the canals, ditches, drains, embankments, pumping plants, etc.—for general taxation purposes might lead to the sale of the works of reclamation and the ultimate destruction or abandonment of an important undertaking of the state."

That language is peculiarly pertinent to the present case in which the assessor of Yuba County levied county taxes upon real property belonging to the reclamation district. If the improvements upon reclamation land are exempt from county taxes, certainly the land belonging to the district would also be exempt under the same provisions of law.

It has been definitely determined by the Supreme Court that all land and property belonging to the United States, or to the State of California or any subdivision thereof, is abso-

lutely exempt from taxation regardless of whether it is held in a proprietary sense, or is used in a governmental capacity. (*Anderson-Cottonwood Irrigation District* v. *Klukkert,* 13 Cal. (2d) 191 [88 P. (2d) 685] ; *Glenn-Colusa Irr. Dist.* v. *Ohrt,* 31 Cal. App. (2d) 619, 624 [88 P. (2d) 763] ; *Laguna Beach County Water Dist.* v. *County of Orange,* 30 Cal. App. (2d) 740 [87 P. (2d) 46] ; 129 A. L. R. 481, note; art. XIII, § 1, Const. of Cal.) In the Klukkert case, *supra,* which is the latest decision of the Supreme Court on that subject, the facts are nearly identical with those of the present case. In that case, lands within the district were sold to the district for delinquent assessments. Subsequent to that sale the county assessor of the county in which the land was situated levied an assessment against the land for county taxes. Suit was commenced by the district to prohibit the county from collecting the taxes, or for cancellation thereof, as an illegal assessment. The trial court decided that the county taxes imposed a valid lien against the land. On appeal, that judgment was reversed. The Supreme Court held that the levy of county taxes was illegal and void under article XIII, section 1, of the Constitution, regardless of whether the land was held by the irrigation district in its governmental capacity or in a proprietary sense. Summing up its conclusions in the last paragraph of the opinion in that regard the court says :

"Under the constitutional provision which makes ownership the sole test of exemption, *the use to which the property is put would be immaterial.*" (Italics added.)

In the case of *Conley* v. *Hawley,* 2 Cal. (2d) 23 [38 P. (2d) 408], upon which the respondent in this case relies, the contrary conclusion of the court is based on the case of *La Mesa Lemon Grove and Spring Valley Irr. Dist.* v. *Hornbeck,* 216 Cal. 730 [17 P. (2d) 143]. But the later Klukkert case specifically distinguishes that case from the La Mesa case in the following language :

"In the light of the holding of this court in the recently decided cases, to which reference hereinbefore has been had, to wit, (citing several late cases) the decision that was rendered in the La Mesa case loses its importance as far as its applicability herein is concerned. Furthermore, in the La Mesa case, the court specifically left open the settlement of the question here presented, holding it unnecessary to reexamine the decisions in the cases entitled, (citing several other cases) and therein declared that none of those cases dealt with the question there under consideration."

Supplementing the annotations found in 101 American Law Reports, at page 787, note, to the effect that "where the exemption of property owned by the state or subordinate municipal bodies is express and unqualified, it cannot be taxed, irrespective of the use to which it is put," the later annotation, which is found in 129 American Law Reports, at page 481, reaffirms that declaration, and supports it by citing the Klukkert case, *supra,* decided by the California court in 1939, together with several cases in other jurisdictions.

In the Ohrt case, *supra,* which was also decided in 1939, this court, in determining what property, belonging to the state or an agency thereof, is exempt from taxation under article XIII, section 1, of the Constitution, distinguishes between "property used exclusively" for public schools and property "belonging to the United States, the State of California," or any subdivision or agency thereof, and gives the reason for that distinction in almost the exact language used in the Klukkert case. In the Ohrt case, we conclude by saying:

"If the intention were to exempt from taxation only such property of the United States or the State of California as is actually used exclusively for the operation of those political entities, it would have been very easy to have thus expressed it. The intention appears to have been clearly otherwise expressed."

We therefore conclude that the lot which is involved in this proceeding was absolutely exempt from county taxes which were levied for the years 1938, 1939 and 1940, while that land was owned by the reclamation district, which is an agency of the State of California. Those assessments were illegal and void. The successor in interest, Sutter-Yuba Investment Company, which acquired title after those assessments were levied against the land, is therefore entitled to redeem the property from the previous valid assessment lien of the reclamation district, free and clear of the invalid county taxes for 1938, 1939 and 1940.

The petition states a good cause of action. The demurrer is overruled, and the respondent is granted twenty days in which to answer.