**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 16, 2023**

# In the Court of Appeals of Georgia

A23A1279. HEAD et al. v. PLANET HOME LENDING, LLC et al.

FULLER, Senior Judge.

In this action to cancel a security deed and for declaratory and injunctive relief, plaintiffs Charles and Lisa Head appeal from the grant of summary judgment to defendants Planet Home Lending, LLC ("PHL") and BCMB1 Trust. The Heads contend that the defendants were not entitled to summary judgment because title under the security deed has reverted to the Heads and, alternatively, that any claims the defendants may have under the deed are barred by laches. For the reasons that follow, we disagree and affirm.

"We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant." *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362

Ga. App. 459, 460 (868 SE2d 827) (2022). So viewed, the record shows that, in 2007, the Heads obtained a second mortgage and executed a related promissory note (the "Note") in the amount of $65,000 in favor of Countrywide Bank, N.A. At that time, Countrywide also held the primary mortgage on the Heads' property. That same day, the Heads executed a security deed (the "Security Deed") conveying the real property securing the second mortgage loan to Mortgage Electronic Registration Systems, Inc. ("MERS"), as Countrywide's nominee. The Security Deed identifies the maturity date for the underlying debt as March 1, 2022. In June 2019, MERS assigned the Security Deed to defendant BCMB1. PHL is BCMB1's servicer for the debt.

The Heads fell behind on both mortgage payments in 2009 and received letters of acceleration as to both loans in 2011. As a result, they initiated bankruptcy proceedings in May 2011. The bankruptcy action was dismissed later that year after the lender refinanced the primary mortgage. At that time, the Heads were unaware that the second mortgage (which is at issue in this action) was not refinanced and that their indebtedness under the Note thus remained outstanding. It appears that neither party took any action with respect to the Note for several years thereafter.

In April 2020 (approximately ten months after BCMB1 obtained the Security deed), counsel for PHL mailed to the Heads notice that they had defaulted on the

2

Note, under which they owed \$114,499.92, and that a foreclosure sale would be held. Later that month, the Heads sued PHL and BCMB1, seeking: (i) a declaration that the expiration of the statute of limitation bars enforcement of the debt evidenced by the Note; (ii) a declaration that they are the true owners of the property, subject to satisfaction only of their primary mortgage; (iii) a temporary injunction barring the foreclosure and sale of the property; (iv) cancellation of the Security Deed; and (v) a declaration that the defendants' attempts to enforce the debt and foreclose are barred by laches. In May 2020, the trial court temporarily enjoined the foreclosure proceedings pending resolution of this action.

Following discovery, the defendants moved for summary judgment. The trial court granted the motion on grounds that: (i) statutes of limitation play no part in the enforceability of security deeds, which instead are governed by the reversionary periods in OCGA § 44-14-80; (ii) here, the Security Deed is valid and enforceable because, under that statute, title will not revert to the Heads until March 1, 2029, seven years after the maturity date shown in the deed; (iii) any potential acceleration of the underlying debt did not accelerate the running of the reversionary period for

3

the Security Deed; and (iv) the doctrine of laches does not bar foreclosure in this case.[1] This appeal followed.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the movant meets this burden, the nonmovant cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Henry*, 362 Ga. App. at 460-461 (citations and punctuation omitted); see OCGA § 9-11-56 (c), (e).

1. The Heads primarily contend that the trial court erred when it determined that the Security Deed is not subject to a statute of limitation and instead is subject only to the reversionary statute. We disagree.

The reversionary statute provides, in relevant part:

> Title to real property conveyed to secure a debt or debts shall revert to the grantor or his or her heirs, personal representatives, successors, and assigns at the expiration of seven years from the maturity of the debt or

---

[1] The trial court did not address the enforceability of the Note, an issue on which we express no opinion.

4

debts or the maturity of the last installment thereof as stated or fixed in the record of the conveyance or, if not recorded, in the conveyance . . . .

OCGA § 44-14-80 (a) (1). The statute of limitation on which the Heads seek to rely pertinently provides: "All actions upon simple contracts in writing shall be brought within six years after the same become due and payable." OCGA § 9-3-24.

Under these statutory provisions, the enforceability of a security deed operates independently of the enforceability of its underlying promissory note, and a security deed thus may be enforced even though the lender cannot collect on the underlying debt because the statute of limitation on the note has expired. See *Minton v. Raytheon Co.*, 222 Ga. App. 85, 86-87 (473 SE2d 177) (1996); accord *Brinson v. McMillan*, 263 Ga. 802, 803 (2) (440 SE2d 22) (1994). That is because "the reversionary statute has a different function than, and is unaffected by, statutes of limitation." *White Properties Investments v. DIP Lending I*, 366 Ga. App. 242, 244 (1) (881 SE2d 706) (2022).

A statute of limitation . . . is a rule limiting the time in which a party may bring an action for a right which has already accrued. OCGA § 44-14-80 (a) is not a statute of limitation. Rather, it establishes a time period after which title to real property conveyed by a security deed that has not been cancelled or foreclosed upon reverts to the grantor as a matter of law.

5

*Id.* at 246 (1) (citations and punctuation omitted); accord *Griggs v. Miller*, 363 Ga. App. 82, 88 (3) (870 SE2d 578) (2022). That distinction follows naturally from the General Assembly's decision to establish "a non-judicial foreclosure process" and thereby "allow secured creditors to foreclose without ever going to court." *Ames v. JP Morgan Chase Bank*, 298 Ga. 732, 740 (3) (d), n. 6 (783 SE2d 614) (2016); see *Patel v. J. P. Morgan Chase Bank*, 327 Ga. App. 321, 324 (1) (757 SE2d 460) (2014) ("a power of sale in a mortgage or security deed" is "a remedy by contract intended to substitute the remedy by law") (citation and punctuation omitted).

Thus, "a security deed stands alone so long as the underlying debt remains, and [the deed holder] is not obligated to satisfy it until the debt is paid regardless of the note's enforceability." *Decatur Fed. S & L Assn. v. Gibson*, 268 Ga. 362, 364 (2) (489 SE2d 820) (1997). So even if "an action to collect the debt is barred by the statute of limitation, such would not prevent [the holder of a security deed] from exercising [its] rights under the security deed." *Brinson*, 263 Ga. at 803 (2).

Here, the defendants' ability to foreclose depends only on the enforceability of the Security Deed, not their ability to collect on the underlying debt (which undisputedly remains unsatisfied). And regardless of whether the statute of limitation bars enforcement of the Note, the enforceability of the Security Deed is unaffected

6

by the statute of limitation for the underlying debt. See *Decatur Fed. S & L Assn.*, 268 Ga. at 364 (2); *Brinson*, 263 Ga. at 803 (2); *White Properties Investments*, 366 Ga. App. at 244 (1); *Minton*, 222 Ga. App. at 86-87.

The Heads' claim that acceleration of the underlying debt also accelerates the expiration of the reversionary period contravenes the plain language of the reversionary statute. Under the statute, title reverts "seven years from the maturity of the debt or debts or the maturity of the last installment thereof *as stated or fixed in the record of the conveyance.*"[2] OCGA § 44-14-80 (a) (1) (emphasis supplied). If the General Assembly had intended for the expiration of the statutory reversionary period to be accelerated by the acceleration of the underlying debt — or otherwise altered by events outside of the "record of conveyance" — it could have said so. See *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (when considering the meaning of a statute, a court must "presume that the General Assembly meant what it said and said what it meant" and afford the statutory text its "plain and ordinary meaning") (citations and punctuation omitted).

---

[2] It is undisputed that the Security Deed was properly recorded in the county real estate records.

Nevertheless, the Heads contend that "[i]t is well-settled law that acceleration applies to [the] underlying debt as a whole, and thus applies to the security deed[ and] underlying note[ ] and initiates the running of the statute of limitations and the reversionary statute." But the authority they cite in support of that claim does not reach so far. In *King v. Edel*, 69 Ga. App. 607 (26 SE2d 365) (1943), on which the Heads rely, this Court observed that a promissory note and deed executed to secure payment of the note "together constituted one contract." Id. at 613 (citation and punctuation omitted). *King*, however, involved an action on a promissory note, in which the question presented was whether the claim was barred by the statute of limitation applicable to simple contracts. Id. at 607. We held that the action was not time-barred, relying in part on representations in the security deed as to the maturity date of the underlying debt. See id. at 611-613. Nowhere in *King* did we suggest that the acceleration of an underlying debt has any effect on the statutory reversionary period applicable to security deeds.[3] See generally id.

---

[3] *King* presumably did not address the reversionary statute because the deed to secure debt at issue in that decision was executed in 1928, several years before the reversionary statute was enacted in 1941. See Ga. L. 1941, pp. 487-489, §§ 1, 10; *King*, 69 Ga. App. at 609.

8

The Heads similarly maintain that, under Georgia law, "when a lender accelerates an indebtedness, such acceleration applies to both the security deed and the underlying note." But again, neither of the two decisions on which they rely for that assertion — *Mayo v. Bank of Carroll County*, 157 Ga. App. 148 (276 SE2d 660) (1981), and *Ward v. Watkins*, 219 Ga. 629 (135 SE2d 421) (1964) — supports it. In *Mayo* — an action for wrongful acceleration of a promissory note and attempted foreclosure of a security deed and other claims — we made the unremarkable observation that, "if the acceleration of the debt was proper for whatever reason . . . , then the security deed grants defendant the power to sell the secured property." 157 Ga. App. at 148, 150 (3). But nothing in *Mayo* suggests that the authority to foreclose due to acceleration of the debt has any effect on the statutory reversionary period. See generally id. And in *Ward* — an ejectment action — a sale of the collateral property "occurred after default and acceleration of the entire indebtedness by the holder of the deed and note." 219 Ga. at 629. But once again, nothing in that decision may be read to suggest that "acceleration of the entire indebtedness" has any effect on the statutory reversionary period. See generally id.

The Heads also cite *Wall v. C & S Bank of Houston County*, 247 Ga. 216 (274 SE2d 486) (1981), for the proposition that, "[w]hen a lender elects acceleration," both

9

"the statute of limitations and the reversionary period begin[ ] to run upon such acceleration." But the decision in *Wall* — an action to recover on a promissory note — says no such thing. See generally id. Rather, the Court in *Wall* merely held that

> the note gives the [lender-]bank an election to accelerate maturity of the debt; . . . if maturity was in fact accelerated, the statute of limitations began to run from the time of the election to accelerate rather than on the date the last installment was due; and . . . the question for the jury was one of whether or not the bank had accelerated maturity.

Id. at 216-217 (1). Nothing in that holding has any bearing on the effect of acceleration on the reversionary statute.

The Heads further contend that the inclusion of an acceleration clause in the Security Deed here shows that acceleration applied to the reversionary period. But they read too much into that clause, which provides:

> 17. Acceleration; Remedies. Except as provided in paragraph 16 hereof [addressing transfer of the property], upon Borrower's breach of any covenant or agreement of Borrower in this deed, including the covenants to pay when due any sums secured by this Deed, Lender prior to acceleration shall give notice to Borrower as provided [elsewhere in the deed] specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice

10

may result in acceleration of the sums secured by this Deed, and sale of the Property. . . . If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without further demand and may invoke the power of sale herein granted . . . .

(Emphasis omitted.) By its terms, the acceleration clause governs "acceleration of the sums secured by this Deed" — i.e., the underlying debt — and not the statutory reversionary period applicable to the deed. And the grant of authority to "declare all of the sums secured by this Deed to be immediately due and payable" upon an uncured breach likewise says nothing about the effect of a breach on the statutory reversionary period.

For the above reasons, we hold that acceleration of the underlying debt has no effect on the statutory reversionary period, which operates independently of the statute of limitation as to the debt, and we reject the Heads' claim to the contrary. Our ruling to that effect renders it unnecessary to address their contentions that the trial court improperly ignored disputed factual issues and weighed the evidence regarding whether the debt was accelerated, as any such acceleration has no bearing on the enforceability of the Security Deed.

2. The Heads further contend that the trial court erred when it rejected their claim that foreclosure is barred by laches. Again, we disagree.

The doctrine of laches is codified in two statutes: (i) OCGA § 9-3-3, which provides, in relevant part, that "courts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights"; and (ii) OCGA § 23-1-25, which provides: "Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, even when no legal limitation bars the right." "Under the doctrine of laches, a party is barred from receiving equitable relief when he has unreasonably delayed in seeking that relief and such delay is prejudicial to the person from whom the relief is sought." *Rhone v. Bolden*, 270 Ga. App. 712, 721 (9) (608 SE2d 22) (2004).

Laches is a *defense* that is grounded in principles of equity. See *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745, 748-750 (3)-(4) (524 SE2d 464) (1999). Consequently, it is not available to a plaintiff. *Steele v. Waycross*, 190 Ga. 816, 822-823 (3) (10 SE2d 867) (1940) (by its plain terms, a predecessor to OCGA § 9-3-3 — which was identical in relevant part to the current statute — made the defense of laches available only to the defendant and not to "the complainant"); *Ga. R. &*

12

*Banking Co. v. Wright*, 124 Ga. 596, 620 (18) (53 SE 251) (1906) (under an earlier — and also materially identical — predecessor to OCGA § 9-3-3, the defense of laches was "available to the defendant only, and [could] not be employed by the complainant in an equitable proceeding to enjoin the enforcement of a purely legal right"), rev'd on other grounds, *Central of Ga. R. Co. v. Wright*, 207 U. S. 127, 141-142 (28 SCt 47, 52 LE 134) (1907); *Nicholas v. Van*, 252 Ga. App. 411, 414 (556 SE2d 497) (2001) (the plaintiff could not take advantage of the defendant-city's alleged laches to excuse the plaintiff's late ante litem notice because OCGA § 9-3-3 affords relief resulting only from the laches of "the complainant") (citation, punctuation, and emphasis omitted), disapproved in part on other grounds, *Dept. of Pub. Safety v. Ragsdale*, 308 Ga. 210, 213-215 & n. 7 (839 SE2d 541) (2020); see also generally *Hall v. Trubey*, 269 Ga. 197, 199 (1) (498 SE2d 258) (1998) ("A court of equity may bar a complaint based on laches when the lapse of time and the claimant's neglect in asserting rights result[ ] in prejudice to the adverse party."); *Troup v. Loden*, 266 Ga. 650, 651 (1)-(2) (469 SE2d 664) (1996) (to successfully assert the "factual defense" of laches, "[t]he defendant must show prejudice from the delay"). It therefore is not surprising that the parties have not cited, and research has

13

not revealed, any Georgia appellate decisions endorsing a plaintiff's claim of laches against a defendant, as the Heads seek to do here.

Indeed, in the only decision we have found contemplating laches under such circumstances, the Supreme Court of Georgia rejected a plaintiff's claim — in an action to enjoin the defendant from foreclosing on a security deed and for cancellation of the deed — that the defendant's rights under the deed were barred by laches. *Brinson*, 263 Ga. at 802, 803 (2). The Court explained, "Provided the right to foreclose or otherwise recover the land conveyed by the security deed is not barred by the provisions of OCGA § 44-14-83" — which bars foreclosure after title has reverted by statute — "even if the evidence at trial reveals that an action to collect the debt is barred by the statute of limitation, such would not prevent [the defendant] from exercising [its] rights under the security deed."[4] Id. at 803 (2). Thus, even if

---

[4] The Heads highlight a footnote in *Brinson*, in which the Court stated that "the security deed ceases to be effective when the power of sale is barred by the statute of limitation" and cited "OCGA § 44-14-80 et seq." 263 Ga. at 802 (1), n. 2. When viewed in context with the cited statutory provisions, it is apparent that the "statute of limitation" mentioned in the *Brinson* footnote refers to the reversionary periods in OCGA § 44-14-80.

laches arguably could be available to a plaintiff seeking to enjoin a foreclosure sale, *Brinson* squarely forecloses the Heads' claim that laches may bar foreclosure here.[5]

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*

---

[5] In *Patel*, 327 Ga. App. at 321-322, 325 (1) & n. 15, we rejected the plaintiff-appellants' claim that laches barred the defendant-lender's counterclaim seeking reinstatement of an erroneously-cancelled security deed. Under the procedural posture of that case, the defendant stood in the shoes of a plaintiff for purposes of its counterclaim, and the plaintiffs thus stood in the shoes of defendants asserting laches as a defense, rather than offensively.